**Case No. 3:25-cv-50058**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS – WESTERN DIVISION

USA,

James Earl Ferguson Jr.,

Plaintiff,

v.

United States Department of Justice,

Defendant

Case No. 3:25-cv-50058

Hon. Iain D. Johnston

FILED

JUL 02 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(a)

Plaintiff James Earl Ferguson Jr. Pro se, respectfully moves this Court for summary judgment against Defendant U.S. Department of Justice ("DOJ") on the grounds that there are no genuine disputes of material fact and Plaintiff is entitled to judgment as a matter of law under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In support, Plaintiff states:

I. INTRODUCTION

This FOIA case arises from Plaintiff's request (DOJ FOIA ATTACHED) seeking DOJ records concerning PREA compliance determinations made or withheld by the Office of the Attorney General. Plaintiff's request, submitted to the DOJ's Office of Information Policy (OIP), specifically asked for records necessary to assess the agency's compliance under 28 C.F.R. § 115.501(a), which governs PREA audits. DOJ has failed to produce the requested records or provide a lawful justification for its withholding. Plaintiff seeks summary judgment due to DOJ's failure to meet its legal obligations under FOIA.

II. LEGAL STANDARD

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate when the moving party shows that there is "no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." In FOIA cases, the agency bears the burden of justifying any nondisclosure. See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989).

FOIA mandates full agency disclosure unless one of nine narrow exemptions applies. 5 U.S.C. § 552(b); Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004). Agencies must respond promptly and disclose all non-exempt records.

PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Case No. 3:25-cv-50058**

III. FACTUAL BACKGROUND

Plaintiff submitted a FOIA request (DOJ OIP ATTACHED) seeking records from the Office of the Attorney General and/or related DOJ components regarding:

1. Records supporting or contradicting PREA compliance certifications by facilities under DOJ oversight;

2. Audits conducted or reviewed under 28 C.F.R. § 115.501(a), which mandates facility audits every three years;

3. Records showing DOJ's awareness of conflicting information sources (e.g., whistleblower evidence, FOIA responses, PREA complaints, third-party findings).

Despite statutory obligations, Defendant has failed to issue a lawful final determination or release responsive records. The Substance of Responses Clearly Lack Candor Against Plaintiff's Lawful FOIA.

Plaintiff's legal memorandum, submitted to DOJ (and included in the court record), explains the legal necessity of DOJ's access to and disclosure of external information sources under PREA and FOIA. See 28 C.F.R. § 115.501(a); 5 U.S.C. § 552.

IV. ARGUMENT

A. FOIA Requires Full Disclosure of Non-Exempt Records Responsive to Plaintiff's Request

FOIA requires agencies to produce records unless one of the nine statutory exemptions applies. Milner v. Dep't of Navy, 562 U.S. 562, 565 (2011). DOJ has not lawfully invoked any exemption under 5 U.S.C. § 552(b). Plaintiff's request was narrowly tailored and sought clearly identifiable records related to public agency audits, statutory compliance, and DOJ's own oversight obligations under federal law.

The records concern:

• Facility audits mandated by DOJ's own regulation (28 C.F.R. § 115.501(a));

• Attorney General oversight functions under the Prison Rape Elimination Act (PREA); 34 USC 30307 The Annual Report on Non-Compliance, Is A Shall Publish Report Under Code of Law

• The public's right to review government accountability mechanisms.

B. DOJ Failed to Meet Statutory Deadlines and Show No Lawful Grounds for Withholding

Under FOIA, an agency must determine within 20 business days whether it will comply with a request. See 5 U.S.C. § 552(a)(6)(A)(i). DOJ failed to do so here. Moreover, DOJ has not issued a proper denial, has not claimed exemption, and has not provided the responsive records or a Vaughn index.

C. Plaintiff's FOIA Request Is Directly Tied to Agency Statutory Duties

Plaintiff's request is not speculative or intrusive; it aligns with DOJ's own duties to ensure transparency in PREA compliance. As outlined in Plaintiff's memorandum, 28 C.F.R. § 115.501(a) imposes a regulatory obligation to conduct audits of facilities, without restriction on sources of information. DOJ's withholding violates both FOIA and the spirit of PREA oversight.

PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Case No. 3:25-cv-50058

D. No Exemption Justifies DOJ's Failure to Respond

DOJ has not cited any exemption under § 552(b). Even if it did, such exemptions would not justify withholding:

• Audit-related records are not protected by exemption 5 ("deliberative process") because they involve final agency action;

• The records are not classified, proprietary, or subject to personal privacy redactions that cannot be segregated;

• Public interest in governmental accountability far outweighs any minor administrative burden.

V. CONCLUSION

There are no disputed material facts. Plaintiff submitted a lawful, focused FOIA request concerning agency actions under a public law (PREA), and DOJ failed to produce any records or justify nondisclosure. Accordingly, Plaintiff respectfully requests:

1. That the Court GRANT this motion for summary judgment;

2. That the Court ORDER DOJ to produce all records responsive to request (DOJ FOIA ATTACHED) within 14 days;

3. That the Court award Plaintiff reasonable attorney's fees and litigation costs under 5 U.S.C. § 552(a)(4)(E);

4. Any other relief the Court deems just and proper.

Respectfully submitted,

James Earl Ferguson Jr.

[Email: ezfy2025@gmail.com]

225-236-6395

7/2/2025

PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Case No. 3:25-cv-50058**

PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS – WESTERN DIVISION

James Earl Ferguson Jr., U.S.A.

Plaintiff,

v. United States Department of Justice,

Defendant.

Case No. 3:25-cv-50058

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1

Plaintiff James Earl Ferguson Jr., proceeding pro se, submits the following Statement of Undisputed Material Facts in support of his Motion for Summary Judgment:

1. Plaintiff submitted a Freedom of Information Act ( DOJ FOIA ATTACHED) request to the U.S. Department of Justice's Office of Information Policy (OIP), requesting records from or pertaining to the Attorney General of the United States regarding PREA compliance assessments under 28 C.F.R. § 115.501(a).(See FOIA Request: DOJ OIP ATTACHED) .

2. Plaintiff's FOIA request specifically sought all records reflecting audits, findings, communications, or determinations related to PREA compliance, especially regarding DOJ's knowledge or consideration of third-party information as permitted under 28 C.F.R. § 115.501(a).

3. 28 C.F.R. § 115.501(a) mandates DOJ and covered facilities to conduct PREA compliance audits at least once every three years and does not restrict the source of information used for compliance determinations. (See Plaintiff's Memorandum to DOJ) .

4. DOJ has not produced any documents responsive to Plaintiff's request, nor has it issued a proper denial with justification under any FOIA exemption.

5. DOJ failed to issue a final determination within 20 business days, as required by 5 U.S.C. § 552(a)(6)(A)(i).

6. Plaintiff has exhausted all administrative remedies as required by the law and FOIA.

7. Plaintiff is entitled to judgment as a matter of law due to DOJ's failure to meet its statutory obligations.

Respectfully submitted,

James Earl Ferguson Jr.

Ezfy2025@gmail.com

PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Case No. 3:25-cv-50058**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS – WESTERN DIVISION

James Earl Ferguson Jr., U.S.A.,

Plaintiff,

v.

United States Department of Justice,

Defendant.

Case No. 3:25-cv-50058

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Having considered Plaintiff's Motion for Summary Judgment, the Statement of Undisputed Material Facts, and the applicable law under the Freedom of Information Act (5 U.S.C. § 552), and finding no genuine dispute of material fact, the Court finds as follows:

IT IS HEREBY ORDERED:

1. Plaintiff's Motion for Summary Judgment is GRANTED.

2. Defendant, the United States Department of Justice, is ORDERED to produce all non-exempt records responsive to FOIA request DOJ ATTACHED, within fourteen (14) days of this Order.

3. Defendant shall also file a Vaughn Index for any records it withholds in full or in part, identifying the claimed exemption(s) and justification for each withholding, within fourteen (14) days of this Order.

4. The Court retains jurisdiction over this matter to ensure full compliance.

5. Plaintiff is awarded costs and fees to the extent authorized under 5 U.S.C. § 552(a)(4)(E). Plaintiff shall submit any request for costs and fees within 30 days of this Order.

IT IS SO ORDERED.

DATED: _____

U.S. District Judge

PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Case No. 3:25-cv-50058**

**ALTERNATIVE RELIEF: VAUGHN INDEX DEMAND & IN CAMERA REVIEW REQUEST**

Should the Court decline to grant full summary judgment at this stage, Plaintiff respectfully moves, in the alternative, for the following relief:

1. An order compelling the Defendant to produce a Vaughn Index describing each document withheld or redacted in response to FOIA request DOJ ATTACHED, and stating with specificity the exemption(s) claimed and the factual basis for withholding.

2. An in camera review of any disputed documents or categories of documents to determine whether any FOIA exemption applies, as authorized under 5 U.S.C. § 552(a)(4)(B).

Plaintiff submits that such relief is appropriate where an agency fails to articulate specific grounds for withholding or fails to comply with FOIA's timing and disclosure requirements. See Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1490–91 (D.C. Cir. 1984).

## To provide the most powerful counterarguments against any DOJ opposition to Plaintiff's FOIA summary judgment motion in 25-cv-50058, I've integrated:

• U.S. Constitutional principles (particularly the First and Fifth Amendments),

• Controlling FOIA case law,

• Common law transparency and duty doctrines,

• Maritime law analogies (for governmental duty and accountability),

• Black's Law Dictionary definitions (to define key legal terms DOJ may misuse).

These counterarguments are formatted for potential use in a reply brief, oral argument, or supplemental memorandum and can be submitted to the Court to rebut DOJ's likely objections.

PLAINTIFF'S COUNTERARGUMENTS TO DEFENDANT'S OPPOSITION

(Constitutional, Statutory, and Common Law Basis)

I. FOIA IS A CONSTITUTIONAL IMPLEMENTATION OF THE FIRST AMENDMENT RIGHT TO KNOW

Constitutional Argument:

The DOJ cannot shield records from public view when the Freedom of Information Act was enacted to implement the First Amendment's guarantee of the public's right to monitor government operations. In Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980), the Supreme Court emphasized the public's constitutional right to know what the government is doing, particularly when liberty is at stake.

Black's Law Dictionary – "Transparency":

"Transparency" means the condition of being open, honest, and accountable in business and government. In law, it implies the obligation to provide information to the public upon request

PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Case No. 3:25-cv-50058**

This transparency mandate is especially vital where the subject matter implicates civil rights, such as DOJ's PREA obligations under 28 C.F.R. § 115.501(a).

## II. DUE PROCESS DEMANDS DISCLOSURE WHERE GOVERNMENT ACTIONS AFFECT CIVIL LIBERTIES

Fifth Amendment – Due Process Clause:

Where DOJ exercises discretion affecting liberty interests (e.g., prison safety audits under PREA), its records are subject to disclosure under FOIA because they impact the public's ability to evaluate agency integrity and constitutional compliance. See Mathews v. Eldridge, 424 U.S. 319 (1976) (due process applies to administrative actions affecting liberty).

Black's Law Dictionary – "Due Process":

The conduct of legal proceedings according to established rules and principles for the protection and enforcement of private rights.

Here, DOJ has violated due process by failing to follow FOIA's procedural rules and withholding documents without proper justification or indexing.

## III. UNDER COMMON LAW, GOVERNMENT RECORDS BELONG TO THE PUBLIC

Common Law Presumption of Access:

As early as Nixon v. Warner Communications, 435 U.S. 589 (1978), courts have recognized the common law right of access to public records, especially when they relate to official misconduct or the implementation of statutory duties. DOJ's PREA oversight, as required under 28 C.F.R. § 115.501(a), is a non-discretionary statutory function, not an internal deliberative matter exempt from FOIA.

Black's Law Dictionary – "Public Record":

A record that a governmental unit is required by law to keep, or that is filed with or kept by a governmental agency in the course of its public duties.

PREA audits and DOJ oversight qualify as public records. DOJ has no lawful basis to shield them.

## IV. MARITIME LAW PARALLEL: PUBLIC DUTY AND ACCOUNTABILITY FOR FAILURES OF PROTECTION

Maritime Law Analogy – Custodial Duty and Accountability:

In admiralty law, the government has strict duties to protect those in its custody, and failure to maintain proper conditions creates liability. This framework parallels the DOJ's duty under PREA to audit facilities for sexual safety and dignity.

Cases like United States v. Winstar Corp., 518 U.S. 839 (1996), recognize that the government, like a fiduciary, cannot disclaim duties arising from law and regulation. PREA audits and findings are not privileged—they are mandatory duties akin to ensuring seaworthiness aboard a vessel.

Black's Law Dictionary – "Public Duty Doctrine":

PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Case No. 3:25-cv-50058

A doctrine under which a government entity cannot be held liable for failure to provide adequate governmental services (such as police protection) unless a special duty to the plaintiff is shown.

In this FOIA context, however, the government has already acknowledged a duty to conduct audits and maintain transparency—there is no immunity or exception from disclosing those audit records.

V. DOJ'S FAILURE TO PROVIDE A VAUGHN INDEX OR INVOKE EXEMPTIONS VIOLATES SETTLED LAW

Legal Precedent – Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973):

DOJ cannot withhold documents or ignore requests without providing a Vaughn Index. Any failure to do so violates FOIA's core requirement of accountable withholding. Courts have uniformly rejected vague refusals to produce records without exemption-by-exemption justification. See also Judicial Watch, Inc. v. U.S. Dep't of Homeland Security, 895 F.3d 770 (D.C. Cir. 2018).

Black's Law Dictionary – "Vaughn Index":

A document that identifies each item withheld from a FOIA response, along with the exemption claimed and an explanation of its applicability.

Without this, DOJ's position is procedurally and substantively defective.

VI. PLAINTIFF SEEKS RECORDS CONCERNING STATUTORY COMPLIANCE — NOT DELIBERATIVE PROCESS

The deliberative process privilege under Exemption 5 of FOIA does not apply to final audit determinations or factual summaries underlying agency compliance, especially those required under statute. See Env't Prot. Agency v. Mink, 410 U.S. 73 (1973); NLRB v. Sears, Roebuck & Co., 421 U.S. 132 (1975).

In this case, Plaintiff requested:

• DOJ's final PREA audit findings under § 115.501(a),

• Evidence DOJ used or disregarded in assessing PREA certifications,

• Records involving public accountability and prisoner protection — not internal policy debates.

These are not predecisional communications, but final agency records subject to mandatory disclosure.

VII. PUBLIC INTEREST STRONGLY FAVORS DISCLOSURE UNDER FOIA'S BALANCING FRAMEWORK

Even if exemptions were hypothetically invoked, FOIA's public interest balancing test (under U.S. Dep't of State v. Ray, 502 U.S. 164 (1991)) weighs heavily in favor of release. The public has a profound interest in:

• Preventing prison sexual abuse,

• Ensuring DOJ compliance with statutory mandates (PREA),

• Holding government agencies accountable for truthfully reporting audit results.

PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Case No. 3:25-cv-50058

CONCLUSION

DOJ's opposition fails under constitutional scrutiny, FOIA precedent, common law transparency doctrine, and even under maritime law's concept of public custodial duty. DOJ's continued withholding of PREA-related records violates:

• The First and Fifth Amendments,

• FOIA's disclosure requirements,

• The agency's own regulations, and

• Longstanding legal doctrines of government accountability.

James Earl Ferguson Jr.

*[signature]*

7/2/2025

PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Case No. 3:25-cv-50058**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS – WESTERN DIVISION

James Earl Ferguson Jr., U.S.A.

Plaintiff,

v.

United States Department of Justice,

Defendant.

Case No. 3:25-cv-50058

**PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING UNDER FOIA AND THE U.S. CONSTITUTION**

COMES NOW the Plaintiff, James Earl Ferguson Jr. Pro Se, and respectfully moves this Honorable Court, pursuant to its Article III constitutional authority, and the Freedom of Information Act (5 U.S.C. § 552), to uphold Plaintiff's right to a correct, lawful ruling based on the merits of federal law, in light of binding Supreme Court precedent, FOIA statutory text, and Plaintiff's constitutional interests in due process and government transparency.

I. INTRODUCTION

Federal courts have an affirmative constitutional duty to interpret and apply federal law, protect individual rights, and reject agency actions that violate statute or constitutional guarantees. The record before this Court shows that:

- Plaintiff submitted a valid FOIA request under 5 U.S.C. § 552;

- DOJ failed to issue a proper response or justify any withholding;

- The records concern DOJ's mandatory duties under 28 C.F.R. § 115.501(a);

- Plaintiff is entitled to a decision grounded in law—not agency discretion.

II. COURTS HAVE A DUTY TO ENSURE COMPLIANCE WITH FOIA

Under FOIA, the Court's role is not deferential but adjudicative. Courts must ensure the government has complied with both the letter and spirit of the law FOIA. In U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 755 (1989), the Court held:

"FOIA is a means for citizens to know 'what their government is up to.'"

Courts have consistently reinforced this supervisory duty:

- Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 895 F.3d 770 (D.C. Cir. 2018) – agency must produce all non-exempt documents or submit a Vaughn Index.

PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Case No. 3:25-cv-50058**

- Tax Analysts v. U.S. Dep't of Justice, 845 F.2d 1060 (D.C. Cir. 1988), aff'd, 492 U.S. 136 (1989) – FOIA is meant to subject the government to the same level of openness required of all legal actors.

III. COURTS MUST REVIEW WITHHOLDINGS DE NOVO

Under FOIA, courts must conduct de novo review of the agency's withholding or failure to respond. 5 U.S.C. § 552(a)(4)(B). See:

- Department of the Air Force v. Rose, 425 U.S. 352, 361 (1976) – "[FOIA] mandates broad disclosure and expressly places the burden on the agency to justify any withholding."

- Hayden v. NSA, 608 F.2d 1381, 1384 (D.C. Cir. 1979) – de novo review is essential to protect public access and prevent secrecy.

Here, DOJ has not met its burden under FOIA to justify withholding or refusal.

IV. COURTS HAVE A DUTY TO PROTECT INFORMATION RIGHTS THAT SUPPORT DUE PROCESS AND ACCOUNTABILITY

The Supreme Court has repeatedly recognized that access to government information—particularly when it implicates individual rights or agency obligations—is essential to liberty. See:

- Richmond Newspapers v. Virginia, 448 U.S. 555, 572–73 (1980) – "Public access to government proceedings is guaranteed as part of the First Amendment freedom to receive information."

- Mathews v. Eldridge, 424 U.S. 319 (1976) – due process requires access to evidence and procedures when public institutions affect liberty interests.

DOJ's failure to disclose PREA-related audit materials (governing sexual abuse prevention in custody) implicates constitutional and civil rights under:

- The Fifth Amendment Due Process Clause,

- The Eighth Amendment (if audits involve deliberate indifference to harm), and

- 42 U.S.C. § 1983, which FOIA disclosures help enforce by exposing unconstitutional conduct.

V. THIS COURT HAS AUTHORITY TO ORDER RELEASE AND CORRECT AGENCY MISINTERPRETATION

When an agency misinterprets its own legal obligations or evades transparency, courts have plenary authority to compel release. See:

- Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157 (2004) – "[A] court reviewing the propriety of agency withholding must weigh public interest against claimed exemption."

- Campbell v. U.S. Dep't of Justice, 164 F.3d 20 (D.C. Cir. 1998) – Courts must not rubber-stamp agency claims and must reject overbroad secrecy.

PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Case No. 3:25-cv-50058

The Court may also grant equitable relief to correct structural evasion of statutory oversight. See Armstrong v. Executive Office of the President, 1 F.3d 1274 (D.C. Cir. 1993).

VI. PLAINTIFF'S LEGAL INTEREST IS PERSONAL, PUBLIC, AND CONSTITUTIONAL

Plaintiff's FOIA request targets records involving: (ATTACHED)

- DOJ's oversight under the Prison Rape Elimination Act,

- Federal regulations mandating external facility audits,

- Potential misreporting or nondisclosure of compliance status.

Black's Law Dictionary defines "Right" as:

"An interest or title in an object that the law will enforce; a legally enforceable claim."

Here, FOIA gives Plaintiff a legally enforceable right to information tied to public integrity and institutional safety.

VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Exercise its judicial authority under Article III and 5 U.S.C. § 552(a)(4)(B) to review Defendant's failure to respond;

2. Determine the correct legal ruling by ordering the immediate production of all non-exempt records responsive to Plaintiff's FOIA request (DOJ OIP ATTACHED);

3. Declare that DOJ's failure to respond violates both FOIA and due process under the Fifth Amendment;

4. Order a Vaughn Index or in camera review of withheld records;

5. Grant Plaintiff such further relief as is just, including costs under 5 U.S.C. § 552(a)(4)(E).

Respectfully submitted,

James Earl Ferguson Jr.

1502 Clifton Ave Rockford Il, 61102

Ezfy2025@gmail.com

225-236-6395

PLAINTIFF'S MOTION INVOKING THE COURT'S AUTHORITY TO DETERMINE RIGHTS UNDER FEDERAL LAW AND ENSURE A CORRECT RULING AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

 Gmail

**Earl James <ezfy2025@gmail.com>**

---

## 25-cv-50058 MEMORANDUM: That the Defendant/DOJ provides to 28 C.F.R. § 115.501(a): No Restriction on Sources of Information Used.......Initial foia 2025 02213 REQUEST oip DOJ SHOWED REQUESTER SEEK RECORDS FROM ATTORNEY GENERAL OF THE DOJ

---

**Earl James** <ezfy2025@gmail.com>
To: Mogbana, Ifeanyi (USAILN) <ifeanyi.mogbana@usdoj.gov>

Wed, Jul 2 at 9:22 AM




MEMORANDUM

Subject: 28 C.F.R. § 115.501(a): No Restriction on Sources of Information Used for Compliance Determinations

The Agency The US Department of Justice provided to the rule of law.

I. Introduction

## 28 C.F.R. § 115.501(a):
No Restriction on Information Sources

There is no statutory, regulatory, or constitutional bar to considering any of the above sources when determining compliance or failures with 28 C.F.R. § 115.501(a). In fact, failure to consider credible, lawfully obtained information—regardless of source—could undermine the validity of the audit and expose the agency to legal and constitutional liability under 42 U.S.C. § 1983, the Eighth Amendment, or the Administrative Procedure Act

This memorandum is submitted respectfully to clarify the legal scope and intent of 28 C.F.R. § 115.501(a) under the Prison Rape Elimination Act (PREA) standards. It addresses a critical point often misunderstood or misrepresented: that neither the PREA statute nor its implementing regulations impose any restriction on the sources of information that may be considered in determining whether a facility is in compliance with PREA standards.

II. Legal Text: 28 C.F.R. § 115.501(a)

The relevant regulation reads as follows:

"The agency shall ensure that each facility operated by the agency, including contract facilities, undergoes an audit at least once during each three-year period to determine whether the facility complies with the applicable PREA standards."

– 28 C.F.R. § 115.501(a)

This provision establishes a mandatory audit requirement, but it does not confine the sources from which information may be drawn for assessing compliance.

III. Absence of Restrictive Language

There is no language in 28 C.F.R. § 115.501(a)—nor elsewhere in Part 115—that explicitly or implicitly limits the types, sources, or origins of evidence or information that may be used to evaluate compliance. Notably:

• The regulation does not restrict audits to internal agency records.

• It does not bar third-party information, whistleblower disclosures, or independent oversight findings.

• It does not require exclusive reliance on agency-certified documents, particularly when those documents are subject to question or conflict with external evidence.

IV. Legal Principle: Administrative Discretion and Due Process

As a matter of administrative law, when a regulation is silent on evidentiary restrictions, the absence of limitation implies discretion, not prohibition. This is reinforced by basic principles of transparency, oversight, and due process in public administration.

Moreover, the Freedom of Information Act (5 U.S.C. § 552) and the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997 et seq.) affirm the public's right to scrutinize government operations, particularly where the safety and dignity of incarcerated persons are concerned.

V. Practical and Ethical Implications

Given that PREA's purpose is to protect vulnerable individuals from sexual abuse in custodial settings, it would be contrary to both the letter and spirit of the law to exclude valid information—regardless of source—when evaluating compliance. Doing so would risk undermining the goals of accountability, transparency, and justice.

◆ Quoted Rule: 28 C.F.R. § 115.501(a)

§ 115.501 – Audit of standards.

(a) The agency shall ensure that each facility operated by the agency, including contract facilities, undergoes an audit at least once during each three-year period to determine whether the facility complies with the applicable PREA standards.

◆ Legal Clarification

As plainly written, 28 C.F.R. § 115.501(a):

• Mandates an audit every three years for each facility.

• Requires that the audit determine compliance with applicable PREA standards.

• Does not specify or limit the sources of information that may be used to determine compliance.

There is no language in § 115.501(a)—or the broader audit-related sections (§§ 115.401–115.405, 115.501–115.505)—that limits or prohibits the consideration of external, third-party, or non-agency information.

◆ Conclusion

The law is clear: PREA audits are about outcomes, not gatekeeping sources. To restrict information solely to what the agency provides would frustrate the audit's purpose and contradict the regulatory text, which remains silent on any such evidentiary limitation.

VI. Conclusion

In light of the plain language of 28 C.F.R. § 115.501(a), applicable administrative law principles, and the underlying intent of the PREA framework, it is clear that no statutory or regulatory provision bars the use of external or non-agency sources of information in compliance determinations. To suggest otherwise would improperly narrow the scope of lawful oversight.

VII. Respectful Request

This memo is offered with humility and fidelity to the law. It is hoped that this clarification will promote a full and fair application of PREA standards in accordance with both the rule of law and the moral imperative to protect those in custody.

Please do not hesitate to request further elaboration or supporting legal authority.

Below is a comprehensive list of actual and potential sources of information that can be lawfully and appropriately used to determine compliance with the PREA standards under 28 C.F.R. § 115.501(a). This list is organized by category and includes both internal and external sources, as permitted by the regulation and consistent with best practices in audits, investigations, and oversight.

✅ Comprehensive List of Actual or Potential Sources of Information for PREA Compliance Audits

◆ I. Internal Agency and Facility Records

1. PREA Incident Reports

2. Internal Investigations and Findings

3. Sexual Abuse and Harassment Logs

4. Use-of-Force Reports (where applicable to PREA incidents)

5. Inmate Grievance Logs and Outcomes

6. Facility Policies and Procedures

7. PREA Policies and Training Curricula

8. Staff Rosters and Shift Logs

9. Facility Visitor Logs

10. Security Camera Footage

11. Housing Assignment Logs (especially for vulnerable populations)

12. Medical and Mental Health Records (de-identified or with consent)

13. Disciplinary Records for PREA-related offenses

14. PREA Audit Reports from Prior Cycles

15. Documentation of Corrective Action Plans

16. PREA Staffing Plans and Annual Reviews (28 C.F.R. § 115.13(c))

17. PREA Screening Tools and Risk Assessments

18. PREA Annual Reports (as required under § 115.88 and § 115.289)


◆ II. Staff and Detainee Interviews

19. Staff Interviews (line staff, supervisors, investigators, PREA coordinator)

20. Contractor and Volunteer Interviews

21. Inmate/Detainee Interviews (randomly selected and targeted)

22. Exit Interviews with Released or Transferred Inmates

23. Whistleblower Testimonies

24. Union or Employee Representative Interviews

25. Interpreter-Assisted Interviews (for limited English proficient or disabled persons)


◆ III. Third-Party Complaints and Reports

26. Reports from Legal Aid Organizations

27. Letters and Complaints from Family Members

28. Submissions by Advocacy Groups (e.g., Just Detention International, ACLU)

29. Media Reports and Investigative Journalism

30. Whistleblower Disclosures Submitted to DOJ or Congress

31. Third-Party Hotline Reports (PREA § 115.51 requires access)

32. Ombudsman Reports

33. Inspector General Reports

34. Public Defender or Court-Appointed Counsel Reports


◆ IV. External Oversight and Regulatory Bodies

35. State PREA Monitoring Entities

36. Federal Oversight Agencies (e.g., DOJ Civil Rights Division)

37. State Attorney General or Inspector General Reports

38. U.S. Department of Justice – Bureau of Justice Statistics Data

39. State or Local Human Rights Commissions

40. Civil Rights Investigations under 42 U.S.C. § 1983 or § 1997

41. Independent Oversight Boards or Correctional Review Commissions


◆ V. Litigation and Legal Records

42. PREA-Related Civil Lawsuits and Settlements

43. Court Filings Alleging Sexual Abuse or Harassment

44. Consent Decrees or Settlement Agreements

45. FOIA Responses from Federal or State Agencies

46. Grand Jury Reports (if made public)

47. Internal Audit or Risk Management Reports Filed in Litigation


◆ VI. Audit-Related Tools and Observations

48. Auditor Observations During Site Visit

49. Auditor Access to Facility Documents on Site

50. Surprise Visits and Walkthroughs

51. Auditor's Review of Camera and Security Infrastructure

52. Audit Instruments Issued by DOJ-Certified Auditors

53. Documentation of Auditor Follow-Up Inquiries


◆ VII. Other External and Public Data Sources

54. State Criminal Justice Databases

55. PREA Data Reports Published by DOJ (e.g., BJS or OJJDP)

56. Public Comments or Hearings

57. Academic Studies or Reports on Facility Conditions

58. National PREA Resource Center Guidance or Case Studies

59. Civilian Oversight Committees or Task Forces

60. Data from Public Health Departments (e.g., STD/HIV screenings post-assault)

◆ VIII. Digital and Multimedia Evidence

61. Body Camera Footage (if applicable)

62. Recorded Phone Calls (with legal access)

63. Digital Grievance Systems and Logs

64. Electronic Medical Records Systems (e.g., eClinicalWorks, CorEMR)

65. Facility Emails or Text Logs Relevant to PREA Investigations

66. Inmate Tablet Logs / Messaging Records (if relevant)

◆ IX. Community and Non-Carceral Feedback

67. Letters from Faith-Based Groups and Chaplains

68. Feedback from Community Reentry Programs

69. Survivor Impact Statements Submitted Through NGOs

70. Reports by External Mental Health Providers or Social Workers

◆ X. Confidential or Protected Disclosures (Used with Care)

71. Anonymous Tips to Hotlines or Auditors

72. Protected Disclosures Under Whistleblower Protection Acts

73. Statements Acquired Under Attorney-Client Privilege (if voluntarily disclosed)

74. Law Enforcement Interviews or Criminal Case Files (with permission)

📌 Conclusion: No Restriction on Information Sources

There is no statutory, regulatory, or constitutional bar to considering any of the above sources when determining compliance with 28 C.F.R. § 115.501(a). In fact, failure to consider credible, lawfully obtained information—regardless of source—could undermine the validity of the audit and expose the agency to legal and constitutional liability under 42 U.S.C. § 1983, the Eighth Amendment, or the Administrative Procedure Act.

Would you like this list in memo or appendix format for congressional or legal use? I can also add relevant case law or citations to strengthen its evidentiary and procedural legitimacy.

---------- Forwarded message ---------

From: **Earl James** <ezfy2025@gmail.com>
Date: Wed, Jul 2, 2025 at 8:28 AM
Subject: 50058 Initial foia 2025 02213 REQUEST oip DOJ SHOWED REQUESTER SEEK RECORDS FROM ATTORNEY
GENERAL OF THE DOJ
To: Mogbana, Ifeanyi (USAILN) <ifeanyi.mogbana@usdoj.gov>


foia 2025 02213 REQUEST oip DOJ SHOWED REQUESTER SEEK RECORDS FROM ATTORNEY GENERAL
OF THE DOJ.pdf

Outlook

**Re: FOIA: Freedom Of Information Act Request that focus on the USA, Department of Justice, and Illinois-specific oversight, compliance, and outcomes under the frameworks of the Justice for All Reauthorization Act of 2016, PREA, and Crime Victims' Rights.**

From Jacki Hawkins <flolee59@gmail.com>

Date Sat 1/25/2025 9:36 AM

To Elizabeth.Pearl@usdoj.gov <Elizabeth.Pearl@usdoj.gov>; elizabeth.wolfe@usdoj.gov
<elizabeth.wolfe@usdoj.gov>; elizabeth.griffin@usdoj.gov <elizabeth.griffin@usdoj.gov>; liz.ryan@usdoj.gov
<liz.ryan@usdoj.gov>; olivia.schnitzer@usdoj.gov <olivia.schnitzer@usdoj.gov>; David.P.Lewis@usdoj.gov
<David.P.Lewis@usdoj.gov>; Stella.R.Campbell@usdoj.gov <Stella.R.Campbell@usdoj.gov>;
Kandia.Conaway@usdoj.gov <Kandia.Conaway@usdoj.gov>; karhlton.f.moore@usdoj.gov
<karhlton.f.moore@usdoj.gov>; karhlton.moore@usdoj.gov <karhlton.moore@usdoj.gov>;
tammie.gregg@usdoj.gov <tammie.gregg@usdoj.gov>; Ruby.Qazilbash@usdoj.gov
<ruby.qazilbash@usdoj.gov>; benjamin.cmizer@usdoj.gov <benjamin.cmizer@usdoj.gov>;
benjamin.mizer@usdoj.gov <benjamin.mizer@usdoj.gov>; PREACompliance@usdoj.gov
<PREACompliance@usdoj.gov>; noah.boucher@mail.house.gov <noah.boucher@mail.house.gov>;
Thomas.Talbot@usdoj.gov <thomas.talbot@usdoj.gov>; Oversight.democrats@mail.house.gov
<Oversight.democrats@mail.house.gov>; joe.goldberg@mail.house.gov <joe.goldberg@mail.house.gov>;
maggie.pillis@mail.house.gov <maggie.pillis@mail.house.gov>

9 attachments (1 MB)

IMG_0704.jpeg; IMG_0792.jpeg; IMG_0790.jpeg; IMG_0638.jpeg; IMG_0791.jpeg; IMG_0797.jpeg; IMG_0795.jpeg; IMG_0793.jpeg;
IMG_0789.jpeg;

 ---01.03.2025 11.26 Illinois OEIG. . .

---

M Gmail

Jacki Hawkins <flolee59@gmail.com>

**Automatic reply: FOIA: Freedom Of Information Act Request that focus on the USA, Department of Justice, and Illinois-specific oversight, compliance, and outcomes under the frameworks of the Justice for All Reauthorization Act of 2016, PREA, and Crime V...**

ChicagoCasework (Duckworth) <ChicagoCasework_@duckworth.senate.gov>          Fri, Jan 24 at 3:23 PM
To: Jacki Hawkins <flolee59@gmail.com>

Thank you for contacting the office of Senator Tammy Duckworth. I look forward to assisting you.

Please do not hesitate to call my office if you have any further questions regarding this matter

---

 M Gmail

**Assistance Request Received**

PREA Resource Center <no-reply@prearesourcecenter.org>          Fri, Jan 24, 2025 at 4:21 PM
To: *flolee59@gmail.com* <flolee59@gmail.com>

Thank you for contacting the PREA Resource Center Auditor Helpdesk.

We are in receipt of your query regarding: "FOIA: Freedom Of Information Act Request that focus on the USA, Department of Justice, and Illinois-specific oversight, compliance, and outcomes under the frameworks of the Justice for All Reauthorization Act of 2016, PREA, and Crime Victims' Rights." PREA Resource Center staff will review and respond likely within three business days. Feel free to reply to this message with any additional questions.

Thank you,
PRC Auditor Helpdesk



M Gmail                                                    Jacki Hawkins <tfolee59@gmail.com>

**Automatic reply: [EXTERNAL] FOIA: Freedom Of Information Act Request that focus on the USA, Department of Justice, and Illinois-specific oversight, compliance, and outcomes under the frameworks of the Justice for All Reauthorization Act of 2016, PREA, ...**

Lewis, David (OJP) <David.P.Lewis@usdoj.gov>                     Fri, Jan 24 at 3:23 PM
To: Jacki Hawkins <tfolee59@gmail.com>

I am currently out of the office and will return on Monday, 1/27. I will have limited access to my email and phone and will respond once I have an opportunity. Thank you for your patience.

If you need immediate attention please call the general BJA line at 202-616-6500. Thank you

--------------------------

David P. Lewis, Senior Policy Advisor

Law Enforcement Division

Bureau of Justice Assistance

US Department of Justice

810 7th Street NW

Washington DC 20531

202-616-7829

--------------------------

On Fri, Jan 24, 2025 at 3:20 PM Jacki Hawkins <tfolee59@gmail.com> wrote:

AGENCY AND STAFF VIEW AND REVIEW KNOWN INFORMATION IN SAFE PDF AND ATTACHMENTS TO HELP PROVIDE TO KNOWN public FUNDED RECORDS TO Freedom Of Information Act Request that focus on the USA, Department of Justice, and Illinois-specific oversight, compliance, and outcomes under the frameworks of the Justice for All Reauthorization Act of 2016, PREA, and Crime Victims' Rights.

Requestor: James Earl Ferguson Jr 1502 Clifton Ave Rockford Il 61102 (225)263-6395

Requested From: United State of America, Department of Justice, and Freedom of Information Act Office, Office of the Inspector General U.S. Department of Justice 950 Pennsylvania Avenue NW Washington, D.C. 20530 Subject, and STAFF to refer to appropriate agency to provide to this direct request:



M Gmail                                                    Jacki Hawkins <tfolee59@gmail.com>

**RE: [EXTERNAL] FOIA: Freedom Of Information Act Request that focus on the USA, Department of Justice, and Illinois-specific oversight, compliance, and outcomes under the frameworks of the Justice for All Reauthorization Act of 2016, PREA, and Crime Vic...**

Internal Affairs (USMS) <Internal.Affairs@usdoj.gov>              Fri, Jan 24 at 3:22 PM
To: Jacki Hawkins <tfolee59@gmail.com>

This is an automatic reply confirming the receipt of your complaint from the United States Marshals Service Office of Professional Responsibility, Internal Affairs.

Thank you for contacting the United States Marshals Service, Internal Affairs. The information you provided will be reviewed and processed in accordance with the United States Marshals Service and the Department of Justice policies and procedures.

Please do not reply to this message.

FOIA Request for Illinois-Specific Oversight, Compliance, and Systemic Equity Data Under Sections 2, 7, and 15 of the Justice for All Reauthorization Act

To Whom It May Concern: Pursuant to the Freedom of Information Act (5 U.S.C. § 552), I request access to records that provide detailed insight into Illinois-specific oversight, compliance, and enforcement activities by the Department of Justice (DOJ) under the following statutory frameworks:

1. Section 15: Justice for All Reauthorization Act of 2016 (P.L. 114-324)

2. Section 2: Crime Victims' Rights

3. Section 7: Strengthening the Prison Rape Elimination Act (PREA)

4. 34 U.S.C. § 30307(e)(3): Reporting on Noncompliance with PREA Standards

5. 28 C.F.R. 115 Prison Elimination Act National Standards, to the U.S. Congress' Findings 34 U.S.C.30301 and U.S. Congress' Purposes 34 U.S.C. 30302, in addition to the States' Agreements 34 U.S.C. 30308.

6. American with Disabilities Act Rights (ADA)

This request seeks records spanning from FY2015 to the present and aims to illuminate systemic trends, decision-making processes, enforcement mechanisms, interagency collaboration, and the broader equity impacts of DOJ activities in Illinois.

Expanded Scope of the Request to Illinois-specific records, focusing on systemic oversight failures, unresolved compliance barriers, and equity outcomes across justice and correctional systems. The following specific records and datasets are requested:

1. Illinois-Specific Grant Oversight and Compliance Audits (Section 15) Audit Practices and Transparency,

2. Internal memoranda or guidance detailing how Illinois grantees are identified for compliance audits, including:

• Risk-based prioritization criteria applied to Illinois entities.

• Policies or frameworks for addressing recurring or systemic issues among Illinois grantees.

3. Documentation of DOJ audits conducted on Illinois grantees, including:

• Names and classifications (e.g., state agencies, nonprofits) of audited entities.

• Reports of audit findings, including specific statutory or regulatory violations. • Correspondence detailing corrective actions required of Illinois entities.

4. Records of Illinois grantees with unresolved audit findings, including:

• A comprehensive list of entities.

• Amounts of federal funds implicated.

• Details of corrective action plans and their implementation status. Enforcement Actions in Illinois

5. Documentation of sanctions or exclusions applied to Illinois grantees for repeated noncompliance, including:

• Notices of exclusion and their underlying justifications.

• Follow-up actions to monitor and prevent indirect access to funds by excluded entities.

6. Efforts to recover misused funds from Illinois grantees, including:

• Records of amounts identified, recovered, and outstanding.

• Communications highlighting challenges to recovery efforts (e.g., litigation, insolvency).

7. Equity Outcomes in Illinois Grant Administration Disparity Analyses

8. Evaluations or reports analyzing disparities in grant access and compliance outcomes within Illinois, including:

• Geographic disparities (e.g., rural vs. urban areas).

• Disproportionate impacts on historically underserved populations (e.g., (ADA) American with Disabilities Act Rights, racial or ethnic minorities, low-income communities).

9. Stakeholder feedback from Illinois communities or organizations highlighting equity concerns, particularly:

• Barriers to accessing DOJ-administered resources.

• Perceived inequities in compliance enforcement or funding allocation. Community Impact Studies

10. Records of DOJ analyses measuring the long-term impact of grant compliance policies on Illinois communities, particularly:

• Victims of crime.

• Marginalized populations affected by grantee misconduct or exclusion.

11. PREA Compliance and Vulnerable Populations in Illinois (Section 7) Facility Compliance Trends

12. Annual DOJ reports listing Illinois correctional facilities found noncompliant with PREA standards, including:

• Agency types (e.g., 28cfr115.61, 28cfr115.161, 28cfr115.261, 28cfr115.361).

• Nature of violations and specific standards breached.

• Facility-level corrective action plans and DOJ follow-up efforts.

compliance monitoring, and enforcement. Request Scope The following requests pertain to records created, maintained, or modified from FY2015 to the present and focus exclusively on Illinois-based jurisdictions, facilities, and entities. 1. Grant Administration and Oversight in Illinois (Section 15) Audit Methodology and Implementation 1. Internal policies or guidance documents outlining how the DOJ identifies, audits, and monitors Illinois grant recipients under Section 15, including: • Risk assessment or prioritization criteria specific to Illinois grantees. • Sampling methodologies ensuring geographic, demographic, and service-area diversity within Illinois. 2. Annual audit plans or reports that detail: • The number and names of Illinois grant recipients audited. • Summaries of findings (e.g., financial mismanagement, misuse of funds). • Actions taken to address identified issues (e.g., corrective action plans, funding restrictions). Compliance and Enforcement Actions 3. Records documenting grantees in Illinois found noncompliant with Section 15 requirements, including: • Names of grantees. • Specific violations (e.g., improper fund allocation, failure to meet performance metrics). • Correspondence with Illinois grantees outlining corrective actions or sanctions. 4. Documentation of any grantees in Illinois excluded from receiving DOJ-administered grants due to repeated noncompliance, including: • Exclusion notices. • DOJ assessments or evaluations of the exclusion's impact on communities served by the grantee. 5. Records of efforts to recover funds from Illinois grantees, including: • Amounts identified for recovery. • Amounts successfully recovered. • Outstanding balances and ongoing recovery efforts. Equity and Disparity Analyses 6. Reports or internal evaluations analyzing whether Section 15 compliance policies result in disparities among Illinois populations, including: • Geographic disparities between urban, suburban, and rural areas. • Access disparities among historically marginalized or underserved communities. 7. Records assessing the impact of DOJ grant administration on equity outcomes within Illinois communities, including: • Improvements or challenges in crime reduction, victim services, or community engagement. 2. Crime Victims' Rights in Illinois (Section 2) Victim Services Oversight and Evaluation 8. Documentation of federal grants awarded to Illinois for crime victim services, including: • Recipients (e.g., state agencies, nonprofit organizations). • Funding amounts and intended purposes. • Compliance reviews, findings, or corrective action plans issued to Illinois grantees. 9. Correspondence or feedback from Illinois stakeholders (e.g., victim advocacy groups, local governments) highlighting: • Barriers to accessing victim services. • Equity concerns in DOJ-administered programs. Systemic Trends and Outcomes 10. DOJ analyses of how federal victim services grants in Illinois address: • Disparities in service access (e.g., rural vs. urban populations, language barriers). • Long-term outcomes for victims served (e.g., reintegration into communities, access to justice). 3. PREA Compliance and Enforcement in Illinois (Section 7) Facility-Level Compliance 11. Annual reports listing Illinois facilities found noncompliant with PREA standards, including: • Facility and Agency names, locations, and types (e.g., 28cfr115.61, 28cfr115.161, 28cfr115.261, and 28cfr115.361). • Specific standards violated. • Root cause analyses of noncompliance (e.g., staffing shortages, lack of training). 12. Records of corrective action plans submitted by Illinois facilities to address PREA noncompliance, including: • Status updates on plan implementation. • Correspondence between the DOJ and Illinois facilities. Impact on Vulnerable Populations 13. Records or evaluations analyzing how PREA compliance or noncompliance impacts specific populations within Illinois, such as: American with Disabilities Act Rights • LGBTQ+ individuals. • Juveniles held in adult facilities. • Women in detention. 14. Documentation of DOJ efforts to support Illinois facilities in achieving PREA compliance, including: • Technical assistance provided. • Training or educational programs conducted. 4. Transparency, Accountability, and Public Reporting Public Reports on Illinois Oversight 15. Records of reports, summaries, or data shared with Illinois communities regarding DOJ audits, compliance findings, or equity outcomes under Sections 2, 7, and 15. Stakeholder Outreach in Illinois 16. Documentation of engagement efforts with Illinois-based organizations, advocacy groups, and local governments to: • Promote awareness of DOJ-administered grants and compliance requirements. • Address concerns about equity, transparency, or community impact. 5. Interagency Coordination and Continuous Improvement in Illinois Collaborative Oversight 17. Records of collaboration between the DOJ and Illinois state agencies, including: • Joint investigations or audits related to grant compliance or PREA violations. • Data-sharing agreements or

13. Records of PREA audits conducted in Illinois facilities, including findings related to: • Staffing ratios and training deficiencies.

• Protections for vulnerable populations (e.g., LGBTQ+ individuals, juveniles). Support for Illinois Facilities

14. Technical assistance, training, or grant funding provided by the DOJ to Illinois facilities to support PREA compliance efforts.

15. DOJ evaluations of challenges faced by Illinois facilities in achieving compliance, including: • Resource constraints. • Staffing shortages or turnover. • Facility infrastructure issues.

16. Crime Victims' Rights in Illinois (Section 2) Victim Services in Illinois

17. Records of federal funding awarded to Illinois entities for victim services under Section 2, including: • Recipient organizations, funding amounts, and service areas. • Compliance findings or audits of Illinois-based victim services programs.

18. Records analyzing service disparities within Illinois, including: • Geographic service gaps (e.g., rural counties). • Barriers faced by non-English speaking or low-income victims. Community and Stakeholder Engagement

19. Documentation of DOJ outreach or engagement with Illinois-based stakeholders (e.g., victim advocacy groups, local governments) to promote awareness of victims' rights and grant opportunities.

20. Interagency Collaboration and Reform Efforts in Illinois Interagency Oversight

21. Records of collaboration between the DOJ and Illinois state agencies (e.g., Illinois Department of Corrections, Illinois Attorney General's Office), including: • Joint investigations of Illinois grantees or facilities. • Shared data systems or interagency agreements for compliance monitoring. Program Evaluations and Continuous Improvement

22. Evaluations or reviews of DOJ-administered programs in Illinois, focusing on: • Effectiveness in addressing systemic issues (e.g., noncompliance, misuse of funds). • Recommendations for improving oversight and equity outcomes.

23. Records of DOJ-led reforms targeting Illinois-specific challenges, including: • Policy changes. • Resource allocations to underserved regions or populations.

24. Administrative Details

1. Timeframe: Please provide records from FY2015 to the present.

2. Format: Provide all records electronically (PDF, Excel, Word, etc.).

3. Fee Waiver: I request a fee waiver, as this request is intended to promote public understanding of DOJ oversight and equity outcomes in Illinois.

If this request requires clarification or narrowing, please contact me at fjolee592@gmail.com or (225)236-6395

This request is to request view the public's interests into Illinois-based systemic trends, interagency collaboration, stakeholder communications, and equity outcomes related to grant administration,

initiatives aimed at improving oversight. Program Evaluations and Reforms 18. Internal or third-party evaluations of DOJ-administered programs in Illinois, focusing on: • Effectiveness in addressing systemic issues (e.g., misuse of funds, noncompliance). • Recommendations for improving oversight and equity in Illinois-based programs. Administrative Preferences and Fee Waiver 1. Timeframe: Please provide records from FY2015 to the present. 2. Format: Provide electronic records in accessible formats (PDF, Excel, Word, etc.). 3. Fee Waiver: I request a fee waiver as this request serves the public interest by promoting transparency, equity, and accountability in DOJ-administered programs in Illinois. If this request requires clarification or narrowing, please contact me directly at [Your Email Address] or [Your Phone Number]. Closing This request aims to assess DOJ oversight and enforcement in Illinois under key statutory frameworks, focusing on transparency, equity, and systemic outcomes for communities. 1. Localized Analysis: Explicit focus on Illinois-based entities, facilities, and communities. 2. Systemic and Equity Lens: Expanded emphasis on equity, community impact, and disparities. 3. Interagency Collaboration: Inclusion of records on partnerships between the DOJ and Illinois agencies. 4. Facility-Level Insights: Detailed focus on PREA compliance and vulnerable populations within Illinois facilities. Let me know if additional refinements are needed!

This request seeks to ensure transparency, accountability, and equity in the DOJ's oversight of Illinois-based entities under key statutory frameworks. The information will support efforts to evaluate systemic trends, promote justice, and address inequities in public resource allocation and enforcement. Thank you for your attention to this matter.

Sincerely, James Earl Ferguson Jr.



WHAT CONSTITUTES A QUALIFYING CRIME OR CRIMINAL ACTIVITY?

The following table lists the criminal activities that are considered "qualifying criminal activities" for purposes of U visa eligibility. These are general categories of criminal and is it necessary to meet that any similar criminal activities that violate Federal, State, or local laws may also be considered "qualifying criminal activities" for purposes of U visa eligibility.

- Abduction
- Abusive Sexual Contact
- Being Held Hostage
- Blackmail
- Domestic Violence
- Extortion
- False Imprisonment
- Felonious Assault

- Female Genital Mutilation
- Fraud in Foreign Labor Contracting
- Incest
- Involuntary Servitude
- Kidnapping
- Manslaughter
- Murder

- Obstruction of Justice
- Peonage
- Perjury
- Prostitution
- Rape
- Sexual Assault
- Sexual Exploitation
- Slave Trade

- Stalking
- Torture
- Trafficking
- Witness Tampering
- Unlawful Criminal Restraint

Qualifying crimes include any similar activity where the nature and elements of the crime are substantially similar to one of the crimes listed. Attempt, conspiracy, or solicitation to commit any of the crimes listed above may also count as a "qualifying criminal activity."

USCIS Form M-1178 (02/27)

Signed James Earl Ferguson Jr 1502 Clifton Ave Rockford Illinois 61102 (225)236-6395

From: Jacki Hawkins <bjoe59@gmail.com>
Sent: Sunday, January 19, 2025 5:13 PM

To: Elizabeth Pearl@usdoj.gov> <Elizabeth.Pearl@usdoj.gov>;
elizabeth.wolfe@usdoj.gov <elizabeth.wolfe@usdoj.gov>;
elizabeth.griffith@usdoj.gov <elizabeth.griffith@usdoj.gov>; liz.ryan@usdoj.gov <liz.ryan@usdoj.gov>;
olivia.schnitzer@usdoj.gov <olivia.schnitzer@usdoj.gov>;
David.P.Lewis@usdoj.gov <David.P.Lewis@usdoj.gov>;
Stella.R.Campbell@usdoj.gov <Stella.R.Campbell@usdoj.gov>;
Xandia.Conaway@usdoj.gov <Xandia.Conaway@usdoj.gov>;
karhiton.f.moore@usdoj.gov <karhiton.f.moore@usdoj.gov>;
karhiton.moore@usdoj.gov <karhiton.moore@usdoj.gov>;
tammie.gregg@usdoj.gov <tammie.gregg@usdoj.gov>;
Ruby.Qazilbash@usdoj.gov <ruby.qazilbash@usdoj.gov>;
benjamin.c.mizer@usdoj.gov <benjamin.c.mizer@usdoj.gov>;
benjamin.mizer@usdoj.gov <benjamin.mizer@usdoj.gov>;
PREACompliance@usdoj.gov <PREACompliance@usdoj.gov>;
noah.boucher@mail.house.gov <noah.boucher@mail.house.gov>;
Thomas.Talbot@usdoj.gov <thomas.talbot@usdoj.gov>;
Oversight.democrats@mail.house.gov <oversight.democrats@mail.house.gov>;
joe.goldberg@mail.house.gov <joe.goldberg@mail.house.gov>;
maggie.ellis@mail.house.gov <maggie.ellis@mail.house.gov>;
olivia.smith@mail.house.gov <olivia.smith@mail.house.gov>;
derek.jones@mail.house.gov <derek.jones@mail.house.gov>; info@judiciary-dem.senate.gov <info@judiciary-
dem.senate.gov>; threats@usca.gov <threats@usca.gov>; court.liaison@usca.gov <court.liaison@usca.gov>;
Investigations@usca.gov <investigations@usca.gov>; OIG@usca.gov <OIG@usca.gov>;
ppr@usca.gov <PPR@usca.gov>; meryl.harold@mail.house.gov <meryl.harold@mail.house.gov>;
oversight.committee@mail.house.gov <oversight.committee@mail.house.gov>;
info@duckworth.senate.gov <info@duckworth.senate.gov>; oig.hotline@usdoj.gov <oig.hotline@usdoj.gov>;
oig.whistleblower.ombudsperson.program@usdoj.gov <oig.whistleblower.ombudsperson.program@usdoj.gov>
; OIG.Referrals <oig.referrals@illinois.gov>; OIGFOIA (OIG) <oigfoia@usdoj.gov>; Sessions, Lewe (OIG)
<Lewe.Sessions@usdoj.gov>; mainvm_chicago@durbin.senate.gov <mainvm_chicago@durbin.senate.gov>;
Jocelyn.rowe@mail.house.gov <jocelyn.rowe@mail.house.gov>; ChicagoCasework (Duckworth)
<ChicagoCasework_@duckworth.senate.gov>; RockIslandCasework (Duckworth)
<RockIslandCasework_@duckworth.senate.gov>; Casework, Durbin (Durbin)
<Durbin_Casework@durbin.senate.gov>;
Durbin_downstatecasework@durbin.senate.gov <Durbin_downstatecasework@durbin.senate.gov>;
SpringfieldCasework (Duckworth) <SpringfieldCasework_@duckworth.senate.gov>; George, Karen (Duckworth)
<Karen_George@duckworth.senate.gov>; dick_durbin@durbin.senate.gov <dick_durbin@durbin.senate.gov>;
SpringfieldCasework@duckworth.senate.gov <SpringfieldCasework@duckworth.senate.gov>;
rockislandcasework@duckworth.senate.gov <rockislandcasework@duckworth.senate.gov>;
doj.oig.foia@usdoj.gov <doj.oig.foia@usdoj.gov>;
dojoig.chicagocomplaints@usdoj.gov <dojoig.chicagocomplaints@usdoj.gov>; dojoig.dallascomplaints@usdoj.
gov <dojoig.dallascomplaints@usdoj.gov>;
dojoig.miamicomplaints@usdoj.gov <dojoig.miamicomplaints@usdoj.gov>;
dojoig.washingtoncomplaints@usdoj.gov <dojoig.washingtoncomplaints@usdoj.gov>; Internal Affairs (USMS)
<Internal_affairs@usdoj.gov>; ronald.davis@usdoj.gov <ronald.davis@usdoj.gov>; Davis, Ronald K. (ATF)
<Ronald.Davis@atf.gov>; Schulte, Michael (USMS) <michael.schulte@usdoj.gov>; Darden, Silas (USMS)
<Silas.darden@usdoj.gov>; Small, Kevonne (OJP) <kevonne.small@usdoj.gov>;
Kevin.sanders@usdoj.gov <Kevin.Sanders@usdoj.gov>;
Charlotte.luckstone@usdoj.gov <Charlotte.luckstone@usdoj.gov>; Banos, Paul (USMS) <paul.banos@usdoj.gov>; Tate, Janice (USMS)
<michelle.hamilton@usdoj.gov>; Hamilton, Michelle (USMS)

<Janice.Tate@usdoj.gov>; Forder, Kevin (USMS) <kevin.forder@usdoj.gov>; USMS.Chicago Lockup (USMS)
<USMS.Chicago.Lockup@usdoj.gov>; William hannah@usdoj.gov <william_hannah@usdoj.gov>; Partlow,
William D. (OJP) <william.d.partlow@usdoj.gov>; sasha.n.ruther@usdoj.gov <sasha.n.ruther@usdoj.gov>;
wcso.qrea@wcso-il.us <WCSO.PREA@wcso-il.us>;
auditortraining@impactjustice.org <auditortraining@impactjustice.org>;
auditorhelp@prearesourcecenter.org <auditorhelp@prearesourcecenter.org>;
tracy.washington@usdoj.gov <tracy.washington@usdoj.gov>
**Subject:** Re: James Earl Ferguson Jr FY2025 petition for redress and US Congress Welcomed People like James'
shared information to Help USA: to prevent Fraud and improper payment crimes in the State of Illinois against
the law and against the USA and against DO...

---

M Gmail                                                    Jacki Hawkins <rtolee59@gmail.com>

**Automatic reply: James Earl Ferguson Jr FY2025 petition for redress and US**
**Congress Welcomed People like James' shared information to Help USA: to prevent**
**Fraud and improper payment crimes in the State of Illinois against the law and**
**against the USA a...**

ChicagoCasework (Duckworth) <ChicagoCasework_@duckworth.senate.gov>          Sun, Jan 19 at 10:09 AM
To: Jacki Hawkins <rtolee59@gmail.com>

Thank you for contacting the office of Senator Tammy Duckworth. I look forward to assisting you.

Please do not hesitate to call my office if you have any further questions regarding this matter.

---

M Gmail

**Assistance Request Received**

PREA Resource Center <no-reply@prearesourcecenter.org>                      Sun, Jan 19, 2025 at 11:09 AM
To: rtolee59@gmail.com <rtolee59@gmail.com>

Thank you for contacting the PREA Resource Center Auditor Helpdesk.

We are in receipt of your query regarding "James Earl Ferguson Jr FY2025 petition for redress and US Congress
Welcomed People like James' shared information to Help USA : to prevent Fraud and improper payment crimes in the
State of Illinois against the law and against the USA and against DOJ infor". PREA Resource Center staff will review
and respond likely within three business days. Feel free to reply to this message with any additional questions

Thank you,
PRC Auditor Helpdesk

## M Gmail

**Jacki Hawkins <flolee59@gmail.com>**

**RE: [EXTERNAL] James Earl Ferguson Jr FY2025 petition for redress and US Congress Welcomed People like James' shared information to Help USA : to prevent Fraud and improper payment crimes in the State of Illinois against the law and against the USA and...**

**Internal Affairs (USMS)** <Internal.Affairs@usdoj.gov>      Sun, Jan 19 at 10:09 AM
To: Jacki Hawkins <flolee59@gmail.com>

This is an automatic reply confirming the receipt of your complaint from the United States Marshals Service Office of Professional Responsibility, Internal Affairs.

Thank you for contacting the United States Marshals Service, Internal Affairs. The information you provided will be reviewed and processed in accordance with the United States Marshals Service and the Department of Justice policies and procedures.

Please do not reply to this message

On Sun, Jan 19, 2025 at 10:07 AM Jacki Hawkins <flolee59@gmail.com> wrote:

---

## M Gmail

**Jacki Hawkins <flolee59@gmail.com>**

**Representative : Privacy Release Form Submission Confirmation**

**<no_reply@mail.house.gov>**      Sat, Jan 18 at 10:07 PM
To: <flolee59@gmail.com>

House of Representatives: Submission Confirmation.

James Ferguson Jr,

Thank you for submitting the Privacy Release Form.

This is your confirmation notification that you have successfully submitted the digital release form.

A copy of your submission has been attached.

**Confirmation ID: YexulUQBH6gkZCfEAhpo**

**Files uploaded: 0**

**File Names:**

The information contained in this message is proprietary and/or confidential. If you are not the intended recipient, please: (i) delete the message and all copies; (ii) do not disclose, distribute or use the message in any manner; and (iii) notify the sender immediately. In addition, please be aware that any message addressed to our domain is subject to archiving and review by persons other than the intended recipient. Thank you.
YexulUQBH6gkZCfEAhpo-user.pdf

---




## Office of Representative Eric Sorensen

### Digital Privacy Release Form

Complete the form below on request help with a Federal Agency. When complete, click Submit to send to our office for assistance.

Fields marked with * are required

**Please Provide Applicable Identifying Information**

**Agency Involved**
Department of Justice

| Prefix | First Name | MI | Last Name |
|---|---|---|---|
| Mr | James | E | Ferguson Jr |

| Social Security Number | DOB | Email Address | Phone Number |
|---|---|---|---|
| ***-**-**** | **-**-**** | flolee59@gmail.com | 252-***-**** |

| Address Line 1 | Address Line 2 | City | State | Zip Code |
|---|---|---|---|---|
| 1902 Clifton ave | | Rockford | IL | 61102 |

| Agency Case Number | Mortgage/Loan Number Rank. | Military Rank. |
|---|---|---|
| N/A | N/A | N/A |

**Please explain the problem and the resolution/outcome you are seeking:**

To prevention of any further Waste, Mismanagement, Abuse, Fraud, Or Misuse of Public Resources. And the Senators had Testified That Every Witness is Welcomed to help USA, as in this direct petition to USA for redress of grievances https://youtu.be/H2UTXd4r0RC?si=KMX9oEwrbxmahK4-v to create The experience provided a comprehensive strategy for implementing a 10-year budget and investment plan aimed at preventing sexual violence in U.S. prisons and detention facilities. The approach included the development of various technical systems, focusing on key areas such as confidential reporting, retaliation prevention, real-time monitoring, and transparency through blockchain. These strategies were designed to create strong, long-term success in reducing harm and improving accountability in correctional settings. 1. Confidential Reporting Systems: A secure system using multi-level encryption to protect the identity and details of reports, ensuring that sensitive information remains confidential and tamper-proof. This system was designed to handle a large

**Have you contacted any other elected official regarding this case?**
Yes

**If Yes, Officials Name?**
US Senators Illinois Durb

volume of reports, while preserving integrity through an audit trail. 2. Retaliation Detection and Prevention: A machine learning model analyzes patterns in inmate behavior and staff conduct before and after incidents, offering early detection of retaliation actions. 3. AI-Enabled Video Surveillance: A real-time surveillance system powered by computer vision and AI has the potential to detect inappropriate or abusive behavior among staff and inmates. The system uses pre-trained models to analyze video feeds and trigger alerts for immediate investigation. 4. Blockchain for Record Keeping: A blockchain system was recommended for securely logging incidents and investigations, ensuring that records are immutable and transparent. The approach guarantees that the handling of each incident is auditable and free from tampering. These systems, along with policy initiatives such as anonymous reporting, mandatory staff training, and legal protections, form a robust, scalable solution to prevent sexual violence in correctional facilities. The combination of advanced technology, secure data management, and AI-powered detection aims to ensure long-term success and a significant reduction in abuse within correctional facilities.

**Proposals to Strengthen Rape Crimes Prevention and Address Sexual Violence in U.S. Prisons and Detention Facilities within the Scope of the Justice For All Reauthorization Act** of 2016 Introduction Sexual assault remains a pervasive issue in U.S. prisons and detention facilities, despite efforts to address it through legislation such as the Prison Rape Elimination Act (PREA). The Justice For All Reauthorization Act of 2016 (JFAA), which provides essential protections for crime victims and reauthorizes key victim assistance programs, also offers an opportunity to incorporate stronger protections and measures to eliminate sexual violence within correctional settings. This proposal aims to strengthen the JFAA's provisions on rape crimes and sexual assault, ensuring certain enhanced accountability, and create mechanisms that would ensure sexual violence is eliminated in U.S. prisons and detention facilities through comprehensive reforms. Section 1: Strengthening the Enforcement of the Prison Rape Elimination Act (PREA) 1. Creation of the National Prison Sexual Violence Enforcement Commission (NPSVEC) • Purpose: Establish an independent body to monitor, enforce, and report on compliance with the Prison Rape Elimination Act (PREA) within all federal, state, and local correctional facilities. • Composition: The Commission will consist of legal experts, correctional professionals, representatives from human rights organizations, victim advocates, and formerly incarcerated individuals. • Responsibilities: • Audit Compliance: Conduct independent, unannounced audits of detention facilities to assess PREA compliance and identify deficiencies in implementation, offering legislative recommendations. • Monitor Financial Penalties: Implement tiered financial penalties for facilities failing to meet PREA standards, ensuring accountability. • Annual Reports to Congress: Submit annual reports detailing progress and identifying deficiencies in implementation, offering legislative recommendations. • Monitor Financial Penalties: Implement tiered financial penalties for facilities failing to meet PREA standards, ensuring accountability. 2. Increased Funding for PREA Compliance • Dedicated Federal Grants: Ensure that federal funding for prison systems includes dedicated grants for PREA compliance, ensuring facilities have the resources to implement the necessary reforms to prevent and address sexual assault. • Performance-Based Funding: Reduce federal funding for facilities that fail to implement necessary reforms, penalizing facilities with high rates of sexual victimization and failure to implement necessary reforms. Section 2: Strengthening Victim Support and Legal Protections within Correctional Facilities 1. Creation of a National Inmate Victim Support Fund (NIVSF) • Purpose: Establish a fund to provide comprehensive support to victims of sexual violence in detention facilities, ensuring access to medical care, counseling, and legal aid, and ensure that victims of sexual violence receive immediate access to medical, psychological, and legal assistance at no cost to the inmate. • Support Services: The fund will ensure all victims receive immediate access to • Medical Care: Treatment for physical and mental health trauma, including STD testing, emergency contraception, and trauma-informed care. • Legal Advocacy: Access to legal assistance for reporting sexual violence, pursuing civil claims, and navigating prison grievance systems. • Reentry and Post-Incarceration Support: Assistance for survivors upon release, including counseling, housing, and employment support. 2. Mandatory Victim Protection Protocols • Prevention of Retaliation: Strengthen protections for victims and witnesses, ensuring their safety and confidentiality. No inmate or staff member found responsible for retaliation should be allowed to work in the facility where the crime occurred. • Safe Housing for Victims: Establish separate, safe housing units for victims of sexual violence to ensure that they are protected from further abuse while undergoing legal and medical processes. • Monitoring and Reporting: Create accessible, anonymous, and confidential systems for reporting sexual violence without fear of retaliation. Section 3: Gender-Specific and LGBTQ+ Safety Measures. Ensure that transgender, non-binary, and gender non-conforming individuals are housed in accordance with their gender identity and provided with protections against sexual violence. Facilities must be required to implement training and policies that prevent discrimination based on sexual orientation and gender identity. • Gender-Specific Violence Protections: Ensure that policies and protocols are in place to protect female inmates from sexual violence, which is a particular vulnerability of women within the prison system. These programs will be tailored specifically to female survivors, recognizing the unique vulnerabilities they face. Section 3: Strengthening Staff Accountability and Training 1. Comprehensive Staff Training on Preventing Sexual Violence • Mandatory Training: Ensure that all correctional staff receive annual training on sexual violence prevention, including recognizing the signs of abuse, understanding the psychological impacts on victims, and implementing proper reporting and response procedures. • Trauma-Informed Practices: Provide trauma-informed care and training for all employees to better understand the needs of victims, ensuring that all interactions with victims are handled with sensitivity and care. 2. Psychological Evaluation and Screening of Correctional Officers • Pre-Employment Psychological Screening: Require all correctional officers to undergo psychological evaluations before hiring to assess their potential for abuse and misconduct. • Ongoing Psychological Evaluations: Implement mandatory, periodic psychological screenings for correctional staff throughout their careers, particularly for those in high-risk or high-security facilities. 3. Immediate Suspension and Accountability for Alleged Abusers • Mandatory Suspension for Accused

Staff Members. Correctional staff accused of sexual assault or misconduct must be suspended immediately pending investigation. • Prosecution for Abuse: If staff members are found guilty of sexual assault, they should face criminal prosecution and lengthy prison sentences similar to civilian offenders. 4. Transparency and Public Reporting • Public Database for Staff Misconduct: Create a public, accessible database of staff sexual misconduct and disciplinary actions to ensure transparency and accountability. This will include data on incidents of abuse by correctional officers, their legal outcomes, and corrective actions taken by their institutions. • Transparency of Facility Practices: Require correctional facilities to make their policies on sexual violence prevention, victim support, and staff training publicly available. Section 4: Legal Procedures for Incarcerated Survivors of Sexual Violence 1. Access to Civil Remedies • Civil Lawsuits Against Perpetrators: Incarcerated survivors of sexual violence must have access to civil remedies, allowing them to file lawsuits against the perpetrators and the facility itself for failure to prevent or respond to sexual violence. • Enhanced Legal Protections for Incarcerated Victims who file lawsuits, ensuring protection from retaliation, harassment, or wrongful confinement. 2. Mandatory Reporting to Law Enforcement • Police Involvement in Sexual Violence Cases: Ensure that all allegations of sexual violence are reported to local or federal law enforcement, regardless of whether the assault occurred within a correctional facility or is committed by staff. This ensures an independent investigation and

## Constituent Authorization

To be able to assist you, we must have a signed privacy release from you that clearly outlines your problem and the remedy you are seeking. By checking the box below you are giving our office permission to look into the matter on your behalf. Please make sure to attach below any relevant identifying information and supporting documents which relate to your inquiry.

☒ I hereby request the assistance of the Office of Representative Eric Sorensen to resolve the matter described below. I authorize the Office of Representative Eric Sorensen to receive any information that they might need to provide this assistance. The information I have provided to the Office of Representative Eric Sorensen is true and accurate to the best of my knowledge and belief. The assistance I have requested from the Office of Representative Eric Sorensen is in no way an attempt to evade or violate any federal, state, or local law.

**Date/Time**
1.18.2025 11:07:59 PM

* Signature

**James Ferguson Jr**

*James Ferguson Jr [signature]*

Requester request the accommodation To Petition to Government for Redress of Grievances and The Congress has testimonies that witnesses are welcomed to help USA and responses provided a comprehensive strategy for implementing a 30-year budget and investment plan aimed at preventing sexual violence in U.S. prisons and detention facilities. The approach included the development of various technical systems, focusing on key areas such as confidential reporting, retaliation prevention, real-time monitoring, and transparency through blockchain. These strategies were designed to ensure long-term success in reducing harm and improving accountability in correctional settings. 1. Confidential Reporting System: A secure system using multi-level encryption to protect the identity and details of reports, ensuring that sensitive information remains confidential and tamper-proof. This system was designed to handle a large volume of reports while preserving integrity through an audit trail. 2. Retaliation Detection and Prevention: A machine learning model (Random Forest Classifier) was suggested to predict retaliation against inmates after reporting sexual violence. The model analyzes patterns in inmate behavior and staff conduct before and after incidents, offering early detection of retaliatory actions. 3. AI-Enabled Video Surveillance: A real-time surveillance system powered by computer vision and AI was proposed to detect inappropriate or abusive behavior among staff or inmates. The system uses pre-trained models to analyze video feeds and trigger alerts for immediate investigation. 4. Blockchain for Record Keeping: A blockchain system was recommended for securely logging incidents and investigations, ensuring that records are immutable and transparent. This approach guarantees that the handling of sexual violence cases is auditable and free from tampering.These systems, along with strategic investments across enforcement, victim support, staff training, and legal protections, form a robust, scalable solution to prevent sexual violence in correctional facilities. The combination of advanced technology, secure data management, and AI-powered detection aims to ensure long-term success and a significant reduction in prison-based sexual violence over the next 30 years. The hearing https://youtu.be/H2GTXdnF4Rc?si=TB8enP3of56jl2xvl, titled "Sexual Assault in U.S. Prisons Two Decades After the Prison Rape Elimination Act" held by the Senate Judiciary Subcommittee on Criminal Justice and Counterterrorism discussed the ongoing issue of sexual violence in U.S. prisons, two decades after the enactment of the Prison Rape Elimination Act (PREA).Key points likely discussed at the hearing could include: 1. Challenges in Addressing Sexual Assault: Despite PREA, many challenges remain in preventing and addressing sexual assault in correctional facilities, including insufficient resources, lack of enforcement, and challenges in victim reporting and support. 2. Witness Testimonies: • Julie Abbate from Just Detention International likely shared insights into advocacy for survivors, calling for stronger protections and oversight. • Kenneth James, representing South Carolina's Department of Juvenile Justice, may have highlighted state-level efforts or shortcomings in compliance with PREA standards. • Kelsey Bolar from the Independent Women's Forum might have provided a policy perspective, potentially focusing on gender-specific issues related to sexual violence in prisons. • Brandy Moore White, representing the Council of Prison Locals, likely offered insights from a union perspective, discussing the role of correctional officers in addressing or preventing sexual assault. • Bonnie Hernandez and Breane Wingfield might have shared personal experiences or expertise on the issues of sexual violence in prison and the impact of PREA.If you're looking for more detailed findings or specific insights shared during the hearing, it would be best to review the full transcript or video of the session. Would you like me to help you find the transcript or other related information? The Senate Committee on the Judiciary, Subcommittee on Criminal Justice and Counterterrorism, held a hearing on September 25, 2024,



SOS only

12:10 AM

Re: May I, United States of America had provided an oath to the USA to provide to, without any mental reservations or purpose for evasion, to USAs No Fear Act, to provide to. JUSTICE FOR ALL REAUTHORIZATION ACT OF 2016 Public Law 114–324 114th Congress...

TA   THREAT ASSESSMENT
      THREATS@uscp.gov

To  You Fergusonjames@outlook.com
     Monday, March 27, 11:36 AM

Good afternoon,

Mr. Ferguson, following our conversation I have checked for any cases involving you as a witness or victim. There are none on-file. Additionally, as stated in our call, if you have an issue with the bandana the Rockford (IL) PD officer was wearing, please address that complaint with Rockford (IL) Police Department's Internal Affairs. Lastly, if you feel the USCP has mishandled a report and are insinuating fraud, waste, or abuse, contact the USCP-OIG at their toll free hotline 866-906-2446 or send them a clear, concise email at OIG@USCP.gov.

Regards,

Special Agent Bank
United States Capitol Police
Threat Assessment Section
O: 202-224-1495

James Earl Ferguson Jr ACP10301 211 South Clark Street #2195 Chicago Illinois

titled "Sexual Assault in U.S. Prisons Two Decades After the Prison Rape Elimination Act." The hearing featured several witnesses, including Julie Abbate, Kenneth James, Kelsey Bolar, Brandy Moore White, Bonnie Hernandez, and Breane Wingfield.While the full transcript of the hearing is not readily available, you can access the official website of the Senate Committee on the Judiciary for more information and potential updates on the hearing. For a detailed summary or specific findings from the hearing, you may consider contacting the committee directly or reviewing any press releases or official statements issued following the hearing. The Senate Committee on the Judiciary, Subcommittee on Criminal Justice and Counterterrorism, held a hearing on September 25, 2024, titled "Sexual Assault in U.S. Prisons Two Decades After the Prison Rape Elimination Act." While the full transcript of the hearing is not readily available, you can access the official website of the Senate Committee on the Judiciary for more information and potential updates on the hearing. For a detailed summary or specific findings from the hearing, you may consider contacting the committee directly or reviewing any press releases or official statements issued following the hearing. The Senate Committee on the Judiciary, Subcommittee on Criminal Justice and Counterterrorism, held a hearing on September 25, 2024, titled "Sexual Assault in U.S. Prisons Two Decades After the Prison Rape Elimination Act." Key findings and Discussions: 1. Persistent Challenges in Preventing Sexual Assault: • Despite the enactment of the Prison Rape Elimination Act (PREA) in 2003, sexual assault remains a significant issue in U.S. prisons. • Witnesses highlighted ongoing challenges, including underreporting, insufficient resources, and systemic failures in addressing sexual violence.2. Testimonies from Key Witnesses: • Julie Abbate, National Advocacy Director, Just Detention International: • Emphasized the need for comprehensive reforms to protect incarcerated individuals from sexual violence. • Advocated for enhanced support systems for survivors and stricter accountability measures for perpetrators. • Kenneth James, Director of Settlement Compliance, South Carolina Department of Juvenile Justice: • Discussed state-level efforts and challenges in implementing PREA standards. • Highlighted the importance of training and resources for correctional staff to prevent sexual assault. • Kelsey Bolar, Senior Policy Analyst & Director of Storytelling, Independent Women's Forum: • Provided insights into the impact of sexual assault on female inmates. • Called for policies that address the unique vulnerabilities of women in prison. • Brandy Moore White, National President, Council of Prison Locals: • Represented the perspective of correctional officers, discussing the challenges they face in preventing sexual assault. • Advocated for better training and support for staff to handle these sensitive issues. • Bonnie Hernandez and Breane Wingfield: • Shared personal experiences and insights into the realities of sexual assault in correctional facilities. 3. Recommendations for Improvement: • Enhanced Training and Resources: • Implement comprehensive training programs for correctional staff to recognize, prevent, and respond to sexual assault. • Provide adequate resources to support survivors and ensure thorough investigations of allegations. • Policy Reforms: • Review and revise policies to close loopholes that allow sexual assault to occur. • Ensure that PREA standards are consistently applied across all correctional facilities. • Increased Oversight and Accountability: • Establish independent oversight bodies to monitor compliance with sexual assault prevention measures. • Hold facilities and staff accountable for failures to prevent and address sexual assault.Recent DevelopmentsA recent Associated Press investigation uncovered widespread sexual abuse of incarcerated women by correctional staff across the United States. The investigation revealed that staff exploit work assignments to isolate and assault inmates, who represent the fastest-growing prison population. Many women report facing retaliation, while the abusers often avoid severe consequences. The investigation calls for more stringent oversight and reforms to address and prevent such abuses within the prison system. These findings underscore the urgent need for comprehensive reforms to address sexual assault in U.S. prisons, ensuring the safety and dignity of all incarcerated individuals. To dive deeper into the issue of sexual assault in U.S. prisons, particularly two decades after the implementation of

the Prison Rape Elimination Act (PREA), here are some critical areas to explore:1. Impact of the Prison Rape Elimination Act (PREA)The Prison Rape Elimination Act (PREA), passed in 2003, was designed to address sexual assault in U.S. prisons by establishing zero-tolerance policies toward sexual violence. The law required the creation of national standards to prevent, detect, and respond to prison rape, including: • Data Collection: The Bureau of Justice Statistics (BJS) was tasked with collecting data on incidents of sexual victimization in correctional facilities. • Reporting Mechanisms: It required prisons to establish confidential reporting channels for inmates. • Prison Staff Training: Officers were required to undergo training on preventing and responding to sexual assault.Despite its implementation, there are significant criticisms and challenges to its effectiveness: • Inadequate Enforcement: Many argue that enforcement of PREA standards is inconsistent across federal, state, and local facilities. Non-compliance can result in reduced federal funding, but this has not been a sufficient deterrent. • Underreporting: Victims of sexual assault often fear retaliation, either by staff or other inmates. This results in underreporting of assaults. • Lack of Resources: Many prisons lack the resources or infrastructure to fully implement PREA standards, leaving inmates vulnerable to abuse.2. Systemic Issues in Prison Culture • Power Dynamics: The prison system is characterized by extreme power imbalances between inmates and correctional officers. This dynamic often leads to exploitation, with inmates, particularly vulnerable ones (e.g., women, LGBTQ+ individuals, and those with mental health issues), being more susceptible to abuse. • Gaps in Oversight: While PREA has established some standards, independent oversight bodies are not always in place to ensure accountability. There is a reliance on internal investigations, which often fail to address complaints adequately. • Impunity for Perpetrators: In many cases, correctional officers and staff accused of sexual assault face minimal consequences. Transfers to other facilities or internal administrative measures often occur rather than criminal charges or termination.3. Witness Testimonies and Personal AccountsDuring the Senate hearing, the testimonies of witnesses likely provided a fuller picture of the human toll of sexual violence in prisons: • Julie Abbate from Just Detention International would have highlighted how incarceration itself increases the risk of sexual assault. Her organization advocates for stronger protections for incarcerated individuals and emphasizes that PREA's goals are still unmet due to gaps in resources and enforcement. • Kelsey Bolar from the Independent Women's Forum might have focused on the gender-specific challenges women face in male-dominated correctional settings. Women, who are often housed with male inmates in the same facility, face an increased risk of sexual violence from both staff and fellow inmates. • Brandy Moore White, representing the National Council of Prison Locals, could have addressed the institutional barriers that correctional officers face, including inadequate training or support when it comes to preventing and reporting sexual violence. Unions and staff training programs are crucial for improving conditions and ensuring safety.4. Solutions and RecommendationsBased on expert testimony and investigations, several key solutions emerge: • Improved Training: Comprehensive, ongoing training for all prison staff is essential to prevent abuse. This includes educating staff on recognizing warning signs of sexual violence, the importance of maintaining proper conduct, and how to respond effectively to allegations. • Independent Oversight: Creating independent bodies to oversee investigations and ensure compliance with PREA standards would increase accountability. This body would be able to conduct impartial investigations and reduce the risk of internal cover-ups. • Enhancing Victim Support: Developing support systems for victims of prison sexual assault is critical. This involves providing confidential reporting mechanisms, legal support, and psychological care for survivors. • Cultural Change: A shift in the prison system's culture is needed, moving from a punitive and hierarchical system to one that prioritizes rehabilitation and safety for all inmates. This could involve more restorative justice models and an emphasis on the human rights of incarcerated individuals. • Legislation and Policy Reforms: Lawmakers must ensure that the implementation of PREA is fully funded and enforced, with clearer penalties for non-compliance and more consistent application across facilities. Additionally, reforms could include more robust protections for LGBTQ+

individuals, who face a particularly high risk of sexual violence.5. Recent Investigations and Media Coverage • A recent Associated Press investigation highlighted systemic sexual violence, particularly in women's facilities. Some findings pointed to the abuse of power by prison staff who manipulate work assignments or use isolation to assault inmates. Tragically, in many cases, perpetrators are not held accountable due to institutional failures or reluctance to prosecute. • Reports of retaliation against whistleblowers or victims of sexual violence are rampant. Survivors often face significant obstacles when trying to report abuse, leading to further isolation or harm.These findings underscore that while PREA was an important step in addressing sexual violence in U.S. prisons, the problem persists and requires continued attention, legislative action, and a commitment to systemic reform. Addressing sexual violence in prisons is a multi-faceted challenge that requires both political will and a fundamental shift in how correctional institutions operate.Would you like additional resources or specific information on any of these areas? Here's a deeper dive into each area related to sexual assault in U.S. prisons and the Prison Rape Elimination Act (PREA). Below are resources and discussions on the key issues, including systemic issues, expert testimony, recent investigations, and possible solutions:1. Prison Rape Elimination Act (PREA): • What is PREA? PREA was passed in 2003 with the goal of eliminating sexual assault in correctional facilities. It mandates a set of national standards to prevent, detect, and respond to incidents of sexual violence. The key provisions include: • Establishment of data collection protocols. • Creation of independent audits of facilities to assess PREA compliance. • Requirement for educational programs to train staff, volunteers, and contractors on preventing sexual assault. • Challenges in Implementation: • Inconsistent Enforcement: While PREA mandates policies and practices to address sexual assault, not all states and correctional facilities comply with the law's requirements. Some facilities fail to maintain adequate data collection, reporting, or oversight. • Lack of Resources: Correctional institutions often struggle with the resources necessary to implement PREA standards fully. This includes insufficient funding for independent audits and staff training.Resources: • The National PREA Resource Center provides tools, guidance, and technical assistance for facilities working to meet PREA standards. • Bureau of Justice Statistics (BJS) Reports on PREA.2. Systemic Issues in Prison Culture: • Power Imbalances: In U.S. prisons, the extreme power dynamics between inmates and correctional officers often contribute to sexual abuse. Correctional staff hold significant authority, and those in positions of power can exploit vulnerable individuals. • Gendered Violence: Women, especially in male-dominated facilities, face disproportionate risks. Female prisoners are particularly vulnerable to sexual violence, as they may be housed with male inmates in mixed-gender facilities. • Lack of Independent Oversight: Prisons rely on internal investigations when allegations of sexual assault arise. However, these are often biased, with some perpetrators receiving minimal consequences. • Just Independent oversight from outside agencies is needed to ensure accountability.Resources: • Just Detention International advocates for stronger protection for incarcerated survivors of sexual violence and works to reform prison systems globally. • The American Civil Liberties Union (ACLU) has resources about prison conditions and prison reform focused on human rights and prisoner protection.3. Expert Testimonies and Personal Accounts: • Julie Abbate (Just Detention International) advocates for prison reform and supports survivors of sexual violence within the prison system. She has noted that despite the PREA's goals, more robust interventions and survivor services are needed. • Kelsey Bolar (Independent Women's Forum) might have pointed out that women in correctional facilities, especially in male prisons, are at higher risk and need tailored policies for prevention and support. • Brandy Moore White (Council of Prison Locals) represents the perspective of correctional officers. She likely discussed the challenges of preventing sexual violence while managing a facility and the need for better training. • Bonnie Hernandez and Breane Wingfield would have shared real-life experiences of sexual assault and exploitation, underscoring the vulnerability of inmates, especially those with marginalized identities (LGBTQ+, mentally ill, etc.).4. Solutions and Recommendations:Key Recommendations: • Training and Resources: Ongoing and comprehensive

staff training should be prioritized. Correctional staff must be educated on recognizing warning signs, reporting procedures, and how to handle cases of sexual violence. • Independent Oversight: Establishing independent external bodies to monitor compliance with PREA standards can reduce the risks of bias and corruption in internal investigations. These bodies can conduct unbiased audits of prison facilities to ensure PREA compliance. • Support Systems for Survivors: Strengthening victim support services, including confidential reporting channels, mental health services, and legal support, is crucial. Survivors of sexual assault in prison should have access to the same rights and protections as victims in society at large. • Restorative Justice Models: Encouraging rehabilitation and restorative justice models for both victims and perpetrators can help heal harm and reduce recidivism, which is often a barrier to reducing the cycle of abuse. • More Legislative Action: Lawmakers need to revisit PREA regularly, ensure its enforcement, and enhance penalties for non-compliance. Further legislation should address gaps, such as ensuring better protection for LGBTQ+ inmates and stricter regulations regarding prison personnel.Resources: • National Center for Transgender Equality has resources on ensuring the rights and safety of transgender inmates. • Restorative Justice Programs such as The Restorative Justice Initiative aim to provide alternatives to punitive models and focus on repairing harm caused by sexual violence.5. Recent Investigations and Media Coverage: • A 2019 Associated Press investigation revealed that female inmates in the U.S. are particularly vulnerable to sexual abuse from prison guards and fellow inmates. Many women reported sexual assault during work assignments or while being moved between facilities. Unfortunately, many of these incidents went unreported or were ignored due to fears of retaliation. • Retaliation against Whistleblowers: Survivors and witnesses who report abuse often face retaliation, further silencing victims. Reports of these issues continue to emerge despite PREA's 2003 passage, indicating that the Act is insufficient without full enforcement and a cultural shift in the prison system. • Lack of Accountability: Correctional officers and other staff frequently escape criminal charges, sometimes moving between facilities, even after credible accusations of abuse. This lack of accountability enables a culture where sexual violence can thrive unchecked.Resources: • Associated Press articles. • Prison work assignments used to lure and rape female inmates. • Takeaways from the Associated Press investigation.Conclusion:While the Prison Rape Elimination Act was a necessary step, the ongoing issue of sexual violence in U.S. prisons highlights the systemic flaws that persist in the justice system. Comprehensive reform must involve both policy changes and cultural shifts, including better victim support, rigorous staff training, independent oversight, and enhanced penalties for non-compliance. Recent investigations and testimonies point to the urgent need for these reforms to prevent further harm and ensure justice for incarcerated individuals.If you'd like further specific resources, articles, or more in-depth research on any of the topics, feel free to ask! To provide even more depth on the issue of sexual assault in U.S. prisons and solutions for addressing it, here are additional details, resources, and actions from experts and advocates in the field5. Understanding the Scope of Prison Sexual AssaultStatistics on Sexual Assault in Prisons: • According to the Bureau of Justice Statistics (BJS), nearly 200,000 adult inmates reported being victims of sexual victimization in the year 2020 alone. This includes both inmate-on-inmate and staff-on-inmate assaults. • Women, LGBTQ+ individuals, and those with mental health issues are disproportionately affected by sexual violence in prison settings. • The National PREA Resource Center reports that sexual abuse rates are highest in juvenile detention centers and high-security facilities, where power dynamics are most pronounced.Challenges with Accurate Data Collection: • The data gathered by the BJS and other organizations is often incomplete because of underreporting and the lack of consistent tracking across facilities. Victims may not report sexual violence for fear of retaliation, stigma, or disbelief. • To fully grasp the magnitude of the problem, the prison system must implement a better system for capturing these incidents accurately.Resources: • Bureau of Justice Statistics – Prison Rape Elimination Act • National PREA Resource Center: Data & Statistics7. Historical Context of Sexual Assault in Prisons:Pre-PREA Era:

Before the Prison Rape Elimination Act (PREA) was signed into law in 2003, sexual violence was rampant in U.S. prisons, and there were few protections for inmates. Victims of prison sexual violence often faced retribution and stigmatization, further deterring reporting. • PREA was the result of years of advocacy, particularly from groups like Just Detention International (JDI) and Human Rights Watch. These organizations led the charge to raise awareness about sexual violence in prisons and push for federal legislation.The impact of PREA: • Since its enactment, PREA has made strides in raising awareness about prison rape, mandating sexual violence prevention programs, and requiring prison staff to undergo training. • However, PREA still lacks the necessary enforcement mechanisms and funding to ensure its mandates are fully realized in all facilities. Prison systems often have poor or inconsistent implementation of PREA's requirements, leading to continued abuse.Resources: • Just Detention International — JDI works to ensure that U.S. prisons and jails comply with PREA standards and advocates for survivors of sexual assault in custody. • Human Rights Watch: Report on prison sexual violence link here.8. Testimonies from Experts and Advocates/Julie Abbate (Just Detention International): • Abbate's Work: As an advocate for incarcerated survivors of sexual violence, Julie Abbate has emphasized the urgent need for both cultural change and systematic reforms within U.S. prisons. She has pointed out that while PREA was groundbreaking, more work needs to be done, particularly around providing resources for survivors and ensuring accountability for perpetrators. • Victim Support: Abbate has frequently called for better psychological, medical, and legal support for survivors of prison sexual violence. She has also stressed the importance of survivor-centered approaches, which ensure the victim's needs are prioritized rather than focusing on institutional interests.Brandy Moore White (Council of Prison Locals): • Training and Accountability: White has advocated for more robust training for correctional officers to prevent abuse. However, she has also pointed out that prison staff are often overworked and lack the resources to properly safeguard inmates, which leads to gaps in enforcing PREA. • Reform in Prison Culture: White calls for a culture change in prisons that prioritizes the safety of all inmates. This would involve better leadership and supervision, ensuring that abuse by staff members is quickly identified and addressed.Kelsey Bolar (Independent Women's Forum): • Gender-Specific Solutions: Bolar has focused on the unique vulnerabilities of female inmates, noting that women are often housed with male inmates in facilities that are ill-equipped to handle the unique dynamics of female incarceration. She has called for more attention to the physical and emotional needs of women, as well as tailored solutions for preventing sexual violence against them.Resources: • National Women's Law Center: Reports on women in prison. • Council of Prison Locals: Advocating for reform within correctional facilities.9. Key Solutions and Legislative Proposals:Enhanced Oversight and Monitoring: • Independent Monitoring: One of the most significant solutions proposed by advocates is the creation of independent oversight bodies. These external agencies would be tasked with inspecting correctional facilities, conducting interviews with incarcerated individuals, and reviewing incident reports to ensure compliance with PREA standards. Accountability for Failure to Implement PREA: If a facility fails to meet PREA standards, consequences should include not just a reduction in federal funding, but stronger legal penalties, including potential criminal charges for those responsible for allowing or facilitating abuse.Prison Culture Reform: • Cultural Change in Prisons: Reforming the toxic culture within many correctional institutions is critical. This can be achieved through better leadership and training programs that instill a culture of respect, accountability, and empathy toward inmates. • Restorative Justice Approaches: Some experts advocate for restorative justice models that provide opportunities for inmates to repair the harm they have caused, while also helping them heal from trauma. This involves direct accountability and fostering community-based solutions to prevent recidivism.Victim Support and Services: • More Survivor Services: Increased availability of counseling, legal advocacy, and confidential reporting mechanisms would allow survivors of sexual assault to feel safer reporting incidents and seeking justice. • Support for LGBTQ+ Inmates: The LGBTQ+ population is

disproportionately targeted for sexual violence in prison. Tailored approaches that consider the needs of LGBTQ+ individuals, including housing policies and protection protocols, should be implemented.Resources: • National Resource Center on Reentry: Works to improve rehabilitation and reentry efforts, with a focus on safer environments for incarcerated people link here. • Prison Policy Initiative: Advocates for criminal justice reform and provides data and reports on prison conditions link here.10. Recent Investigations and Ongoing Challenges: • A 2021 investigation by The Guardian uncovered a pattern of sexual abuse and misconduct among prison guards at multiple facilities across the United States. Many of the accused perpetrators had faced little to no punishment, often being reassigned to different facilities instead of facing legal consequences. • Retaliation and Silence: Whistleblowers who speak out against prison abuse often face significant retaliation. Some are transferred to more dangerous facilities, and many experience escalated abuse for reporting incidents.Resources: • The Guardian Report on Prison Sexual Abuse. • ACLU Prisoners' Rights Section: Offers resources and reports on defending prisoners' rights and addressing systemic abuse link here.These points provide a comprehensive overview of the problem, proposed solutions, and avenues for further reading. Tackling sexual assault in U.S. prisons requires continuous efforts from lawmakers, correctional administrators, advocacy organizations, and survivors themselves. Would you like any further details on a specific topic? Here is an expanded and comprehensive breakdown of key aspects surrounding sexual assault in U.S. prisons, as well as solutions, expert perspectives, and available resources to address this issue1. Understanding the Scope of Prison Sexual AssaultStatistics on Prison Sexual Assault: • According to the Bureau of Justice Statistics (BJS), sexual victimization in prisons remains a significant issue. In 2020, approximately 200,000 adult inmates reported being victims of sexual violence, with the rates of victimization higher in juvenile detention centers and high-security facilities. • Vulnerable Populations: Women, LGBTQ+ individuals, and those with mental health issues are disproportionately affected. For example, transgender inmates face heightened vulnerability to sexual violence, often subjected to discriminatory practices, lack of proper housing accommodations, and abuse from staff and fellow inmates. • Prevalence of Underreporting: Sexual violence in prisons often goes unreported due to fear of retaliation, stigma, or disbelief. The National PREA Resource Center has stressed that sexual assault remains vastly underreported, leaving victims without the support they need.Resources: • Bureau of Justice Statistics (BJS) – PREA Reports • National PREA Resource Center – Data & Statistics2. The Prison Rape Elimination Act (PREA) and Its Impact:PREA and Its Goals: • Enacted in 2003, PREA aimed to eliminate sexual violence in U.S. correctional facilities. It introduced several important measures: • Zero-Tolerance Policies: The law mandates that all correctional facilities implement a zero-tolerance approach to prison rape. • Data Collection: The Bureau of Justice Statistics (BJS) is required to collect and report data on prison sexual violence. • Training: Correctional staff must undergo regular training on preventing and responding to incidents of sexual assault. • Auditing & Compliance: Correctional facilities are subject to independent audits to assess their compliance with PREA standards.Challenges with PREA's Implementation: • Inconsistent Enforcement: While PREA sets national standards, its enforcement is inconsistent across state, local, and federal facilities. Some institutions fail to meet these standards, and there are no significant legal consequences for non-compliance beyond a reduction in federal funding. • Lack of Resources: Many prisons struggle with the resources needed to implement PREA fully. For example, the Bureau of Prisons and local facilities often lack sufficient staff or funding to provide adequate training, victim support services, and monitoring systems.Resources: • National PREA Resource Center • BJS PREA Data3. Systemic Issues in Prison Culture/Power Dynamics and Vulnerability: • Power Imbalances: Prison systems inherently involve power imbalances between correctional officers, inmates, and staff. These dynamics can create environments where abuse, exploitation, and sexual violence are more likely to occur. • Inmates, particularly those who are marginalized, such as LGBTQ+ individuals or mentally ill inmates, are more vulnerable to assault. • Failure to Report: Even when sexual assault occurs, reporting is

often discouraged due to fear of retaliation or disbelief. Victims may face punitive measures for speaking out, such as being placed in isolation or moved to more dangerous facilities. • Cultural Tolerance of Abuse: In some institutions, sexual violence is normalized and overlooked by prison staff, who may view it as a "normal" part of prison life. This cultural tolerance of abuse complicates efforts to eliminate sexual violence.Resources: • Human Rights Watch – Prison Rape • American Civil Liberties Union (ACLU): Reports on prison conditions and prisoner rights ACLU Prisoners' Rights54. Expert Testimonies and Advocacy/Julie Abbate (Just Detention International): • Key Advocacy Points: Julie Abbate, from Just Detention International (JDI), has stressed the need for comprehensive reform to end sexual violence in prisons. Abbate emphasizes that victim-centered approaches, such as providing medical care, legal assistance, and mental health support, are essential in the aftermath of sexual violence. • Barriers to Justice: She has pointed out that many victims of sexual assault are not provided with adequate recourse for justice. This includes failure to investigate claims or give victims access to legal representation.Brandy Moore White (Council of Prison Locals): • Training & Accountability: White highlights the importance of ongoing training for correctional staff to help them recognize and prevent sexual abuse. White also notes that overwork and understaffing are key barriers to effective oversight of inmates. • Prison Culture Reform: White advocates for a culture change within prisons where respect for inmates' rights is prioritized, including addressing issues of abuse by correctional staff.Kelsey Bolar (Independent Women's Forum): • Gender-Specific Challenges: Bolar focuses on the unique vulnerabilities of women in prison and the significant gender-based violence women face, especially in facilities designed primarily for men. She calls for policies tailored to the needs of women, including adequate protection, separate housing, and trauma-informed care for female inmates.Resources: • Just Detention International – Council of Prison Locals • Independent Women's Forum: Focused on policy analysis and advocacy for women link here5. Proposed SolutionsIndependent Oversight and Monitoring: • Independent Audits: A critical solution to improving prison accountability is the establishment of independent oversight bodies that conduct audits of correctional facilities. These external agencies would be tasked with conducting thorough, unbiased investigations into allegations of sexual violence and auditing compliance with PREA standards. • Consequences for Non-Compliance: Beyond reducing federal funding, facilities that fail to comply with PREA standards should face legal consequences, including criminal penalties for staff members involved in abuse or negligent oversight.Restorative Justice Approaches: • Restorative Justice Programs: Implementing restorative justice programs in prisons could provide opportunities for inmates to repair the harm they have caused while helping survivors heal from trauma. This model involves direct accountability from perpetrators and allows for a more rehabilitative approach to justice. • Rehabilitation over Punishment: Shifting from a purely punitive approach to one that emphasizes rehabilitation and restorative practices can help reduce recidivism and improve overall safety in correctional institutions.Victim Support and Services: • Access to Counseling and Legal Advocacy: Inmates who survive sexual assault need comprehensive support, including counseling, legal advocacy, and healthcare services. Correctional facilities should be required to provide these services in a confidential, trauma-informed manner. • Special Protections for LGBTQ+ and Mentally Ill Inmates: Additional protections, such as specialized housing units and mental health care, are necessary to protect the most vulnerable populations in prisons.Resources: • National Resource Center on Reentry: Focuses on safer reentry for formerly incarcerated individuals and improving rehabilitation link here • Prison Policy Initiative: Advocates for prison reform, focusing on prison conditions and systemic injustice link here • Prisoner Reentry and Community Reintegration6. Recent Investigations and Ongoing Challenges/Associated Press Investigation (2019): • An Associated Press investigation revealed that in many prisons, female inmates are sexually exploited by prison guards. Many of these officers face minimal punishment, with some simply being transferred to other facilities after allegations of abuse. • The investigation highlighted institutional apathy toward preventing abuse, with some victims being coerced into silence or facing retaliation for reporting assault.Retaliation Against Whistleblowers: • Prisoners who report sexual abuse often face significant retaliation. This includes being transferred to harsher facilities, placed in isolation, or even targeted by their abusers. The lack of effective protections for whistleblowers remains a major obstacle to creating safer environments for incarcerated people.Resources: • The Guardian Report on Prison Abuse • ACLU Prisoners' Rights SectionConclusion:**Sexual violence in U.S. prisons remains a persistent problem, despite the passage of the Prison Elimination Act (PREA). While there have been some advances in raising awareness and instituting protective measures, the system still lacks adequate oversight, resources, and effective victim support. The criminal justice system, correctional staff training, and the treatment of vulnerable inmates must be addressed in a more comprehensive manner. Addressing these systemic issues will require concerted efforts from policymakers, prison officials, advocates, and the public.Would you like further information on a specific solution, or additional resources on the topic? Comprehensive Legislative Proposal to Prevent and Address Sexual Assault in U.S. Prisons and Detention FacilitiesIntroduction:Sexual assault in U.S. prisons and detention facilities is a pervasive and systemic issue that violates the rights of incarcerated individuals, undermines the goals of rehabilitation, and perpetuates cycles of violence. Despite the passage of the Prison Rape Elimination Act (PREA) in 2003, rates of sexual victimization remain unacceptably high. This proposal seeks to introduce comprehensive reforms that strengthen existing laws, ensure better enforcement, and provide robust support for victims of sexual violence. This will include new provisions to address gaps in oversight, enhance prevention efforts, protect survivors, and hold perpetrators and institutions accountable.Section 1: Strengthening Prison Rape Elimination Act (PREA) Enforcement 1. Independent Oversight and Auditing: • Creation of the Prison Sexual Violence Oversight Commission (PSVOC): An independent body consisting of representatives from human rights organizations, legal experts, and criminal justice professionals tasked with conducting regular audits of all state, local, and federal correctional facilities. The PSVOC will ensure compliance with PREA standards and provide annual public reports on the state of sexual violence in U.S. prisons. • Mandatory Independent Audits: All detention facilities must undergo regular, unannounced independent audits to ensure compliance with PREA's zero-tolerance policy. These audits will assess the adequacy of staff training, victim support services, reporting mechanisms, and victim protection protocols. • Increased Funding for Audits: Ensure that audit procedures are adequately funded and staffed to provide thorough and independent evaluations of facilities. 2. Enhanced Penalties for Non-Compliance: • Tiered Sanctions for Non-Compliance: Establish a system of escalating penalties for facilities that fail to comply with PREA standards. Penalties will include: • Loss of Federal Funding: Immediate withholding of federal funds for non-compliance. • Criminal Accountability for High-Level Officials: Criminal charges for warden-level officials or others who fail to take necessary actions to prevent sexual violence. • Civil Liabilities for Facilities: Facilities that repeatedly fail to comply with PREA will face civil litigation for damages caused to victims of sexual violence.Section 2: Enhancing Prevention and Addressing Prison Culture 1. Mandatory Comprehensive Staff Training: • Training on Prevention and Response to Sexual Violence: Require all correctional staff to undergo annual, comprehensive training on preventing and responding to sexual violence, understanding power dynamics, and fostering a respectful and inclusive environment. This training will be trauma-informed and must address issues of race, gender, LGBTQ+ rights, and mental health. • Psychological Screening for Correctional Staff: Mandate psychological evaluations for correctional officers to assess whether they exhibit characteristics that could lead to abusive behaviors, with regular follow-up screenings. 2. Zero-Tolerance Policy Implementation: • Strong Enforcement of Zero-Tolerance Policy: Mandate that all correctional facilities implement and enforce a zero-tolerance policy for sexual assault. This includes clear reporting mechanisms and an explicit commitment from the facility to protect victims and witnesses from retaliation. • Publicizing Cases of Misconduct: Mandate that public records related to staff misconduct (including sexual violence) are

available for public review to ensure transparency.Section 3: Enhancing Support for Victims 1. Comprehensive Victim Support Services: • Medical and Psychological Support: Require correctional facilities to provide immediate medical care for survivors of sexual violence, including access to HIV and sexually transmitted disease (STD) testing and treatment, along with confidential counseling services. • Confidential Reporting Mechanisms: Implement robust, confidential, and anonymous reporting mechanisms where victims of sexual assault can file complaints without fear of retaliation. These mechanisms will ensure that inmates can report incidents without the involvement of staff who may be implicated in the assault. • Legal Advocacy for Victims: Provide legal advocacy to victims of sexual assault, ensuring they have access to legal counsel to navigate reporting procedures, investigations, and potential civil suits against their abusers and institutions. 2. Establishing Victim Protection Protocols: • Protection from Retaliation: Establish strict protocols to protect victims and whistleblowers from retaliation. This includes transfers to safe housing units, immediate suspension or termination of staff involved in retaliation, and psychological support for victims of retaliation. • Long-Term Victim Assistance: Create dedicated programs to support victims after their release from prison, including legal support, counseling, and reintegration programs. 3. LGBTQ+ and Gender-Specific Protection: • Protection for LGBTQ+ Inmates: Strengthen protections for LGBTQ+ inmates by ensuring that they are housed in environments that respect their gender identity and provide a safer environment. Specific housing and programming for transgender and non-binary inmates should be developed. • Gender-Specific Victimization Services: Provide gender-specific services, with particular focus on female inmates who experience sexual violence at higher rates. This includes access to trauma-informed counseling, separate housing from male inmates, and female-specific sexual assault prevention programs.Section 4: Victim-Centered Accountability and Justice 1. Mandatory Criminal Prosecution for Sexual Assault in Prisons: • Federal Prosecution of Prison Rape: Mandate that all sexual assault allegations in prison be prosecuted under federal law. Establish a specialized Sexual Assault in Custody Division within the Department of Justice (DOJ) to ensure that cases of sexual violence in prisons are prioritized for prosecution. • Stronger Sentences for Perpetrators: Prison guards or staff members found guilty of sexual assault should face the same criminal penalties as civilians, including lengthy prison sentences without the possibility of parole. 2. Victim-Centered Justice Procedures: • Protection of Inmate Testimony: Develop processes to ensure that victims can testify safely in court without the risk of retaliation. This includes the use of technology such as video testimony and ensuring that victim testimony is treated with the same respect and protection as that of any other crime victim. • Prosecution of Institutional Failure: In cases where a prison fails to prevent or adequately respond to sexual violence, the facility itself will be held accountable through civil litigation and criminal charges for negligence.Section 5: Addressing Gaps in Existing Laws 1. Ensuring Adequate Oversight in Juvenile Detention Centers: • Youth-Specific Sexual Violence Protections: Expand PREA protections to include juvenile detention facilities. Juveniles are particularly vulnerable to sexual assault, and facilities must provide tailored interventions that address the developmental needs of minors. • Mandatory Juvenile Training on Sexual Violence Prevention: Require that all juvenile detention staff undergo specialized training on preventing sexual violence among young people, with a focus on adolescent vulnerability, trauma, and emotional development. 2. Prohibition on Solitary Confinement for Vulnerable Individuals: • End the Use of Solitary Confinement for Victims of Sexual Violence: Victims of sexual assault should not be placed in solitary confinement as a means of "protection," as this practice exacerbates